**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VEDANTA BIOSCIENCES INC. and THE UNIVERSITY OF TOKYO,<br><br>Plaintiffs,<br><br>v.<br><br>SERES THERAPEUTICS INC., NESTLÉ S.A., SOCIÉTÉ DES PRODUITS, NESTLÉ S.A., NESTLÉ HEALTH SCIENCE S.A., NHSC RX LICENSE GMBH, AIMMUNE THERAPEUTICS, INC., and NESTLE HEALTHCARE NUTRITION, INC.,<br><br>Defendants. | ) | C.A. No. 1:24-cv-00957-RGA |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS SERES THERAPEUTICS, INC., AIMMUNE THERAPEUTICS, INC., AND NESTLE HEALTHCARE NUTRITION, INC.'S MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants*

March 3, 2025

## TABLE OF CONTENTS


I. NATURE AND STAGE OF THE PROCEEDINGS ........ 1

II. SUMMARY OF THE ARGUMENT ........ 2

III. STATEMENT OF FACTS ........ 3

A. The Asserted Patents ........ 3

B. Plaintiffs' Infringement Allegations ........ 5

IV. LEGAL STANDARDS ........ 6

A. Motions to Dismiss Under Rule 12(b)(6) ........ 6

B. Direct and Indirect Patent Infringement ........ 7

V. ARGUMENT ........ 8

A. Plaintiffs Fail to State a Claim for Infringement ........ 8

1. Plaintiffs Do Not Plausibly Allege That Vowst® "Induces Proliferation and/or Accumulation of Regulatory T Cells" ........ 9

2. Plaintiffs Do Not Plausibly Allege That Vowst® Comprises "*Clostridium* Clusters IV or XIVa" ........ 13

VI. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## Cases

*Artrip v. Ball Corp.*,
735 Fed. Appx. 708 (Fed. Cir. 2018)........8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........6, 7, 9

*In re Burlington Coat Factory Secs. Litig.*,
114 F.3d 1410 (3d Cir. 1997)........7, 10

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022)........10

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)........8

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)........8

*New Jersey Second Amend. Soc'y v. New Jersey Press Ass'n*,
No. 20-5228, 2021 WL 4822050 (D.N.J. Oct. 15, 2021)........7

*Papasan v. Allain*,
478 U.S. 265 (1986)........9

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018)........9

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*,
No. 14-1482-SLR, 2015 WL 4477700 (D. Del. July 22, 2015)........7

*Raindance Technologies, Inc. v .10x Genomics, Inc.*,
No. 15-152, 2016 WL 927143 (D. Del. Mar. 4, 2016)........7

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002)........7

*SIPCO, LLC v. Streetline, Inc.*,
230 F. Supp. 3d 351 (D. Del. 2017)........8

*SuperInterconnect Techs. LLC v. HP Inc.*,
No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019)........8

*Swirlate IP LLC v. Keep Truckin, Inc.*,
No. 20-1283-CFC, 2021 WL 3187571 (D. Del. July 28, 2021) ..............................................8

**Statutes / Rules**

35 U.S.C. § 271(a) .....................................................................................................................5

35 U.S.C. § 271(b) .....................................................................................................................6

Fed. R. Civ. P. 8(a)(2).................................................................................................................6

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 6

## I. NATURE AND STAGE OF THE PROCEEDINGS

This is an action for patent infringement. On August 20, 2024, Plaintiffs Vedanta Biosciences Inc. and the University of Tokyo (collectively, "Plaintiffs") sued Defendants Seres Therapeutics, Inc. ("Seres"), Nestlé S.A. ("Nestlé SA"), Société Des Produits Nestlé S.A. ("SPN"), Nestlé Health Science S.A. ("NHS SA"), and Nestlé Health Science US Holdings, Inc. ("NHS US") for infringement of United States Patent Nos. 9,433,652 (the "'652 patent"), 9,662,381 (the "'381 patent"), 9,808,519 (the "'519 patent"), 10,555,978 (the "'978 patent"), and 11,090,343 (the "'343 patent") (collectively, the "Asserted Patents"). *See* D.I. 1.

On December 23, 2024, Plaintiffs filed a First Amended Complaint ("FAC"), which makes the same infringement allegations against a slightly different set of defendants. *See* D.I. 16. Plaintiffs' FAC names as defendants Seres, Aimmune Therapeutics, Inc. ("Aimmune"), and Nestlé Healthcare Nutrition, Inc. ("NHC Nutrition") (collectively, the "US Defendants").[1] Plaintiffs' FAC also names as defendants Nestlé SA, SPN, NHS SA, and NHSc Rx License GmbH ("NHS Rx") (collectively, the "ex-US Defendants"). By ordered stipulation, the US Defendants' deadline to move, answer, or otherwise respond to Plaintiffs' FAC is March 3, 2025. *See* D.I. 17.

US Defendants move under Rule 12(b)(6) to dismiss all of Plaintiffs' claims of infringement of the Asserted Patents. As set forth herein, Plaintiffs fail to plausibly allege that Vowst®, the product accused of infringement, has the two attributes that, taken together, are required by all of the Asserted Patents' claims. For that reason, Plaintiffs' FAC should be dismissed in its entirety.

---

[1] NHS US is not named in Plaintiffs' FAC and, as such, is no longer a defendant. *See* D.I. 17.

## II. SUMMARY OF THE ARGUMENT

1. Plaintiffs' FAC asserts infringement of the Asserted Patents by Defendants' alleged activities related to the Vowst® product. All claims of the Asserted Patents require a pharmaceutical composition that: (1) "induces proliferation and/or accumulation of regulatory T cells;" and/or (2) comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa." But Plaintiffs fail to plausibly allege that Vowst® meets either of these claimed requirements.

2. Plaintiffs do not plausibly allege that Vowst® "induces proliferation and/or accumulation of regulatory T cells." Plaintiffs do not argue that Vowst® directly acts on T cells. Instead, Plaintiffs argue that Vowst® affects levels of a substance known as "butyrate" and that there is a possible connection between butyrate levels and regulatory T-cell proliferation and/or accumulation. This theory finds no support in the Asserted Patents, which—despite purportedly reflecting years of research on this subject matter—are silent on any purported connection between butyrate levels and regulatory T cell proliferation and/or accumulation. Nor are Plaintiffs' allegations tethered to any actual properties of Vowst® with respect to the proliferation and/or accumulation of regulatory T cells. Thus, Plaintiffs' bare suppositions regarding butyrate do not amount to a plausible allegation that Vowst or its active ingredient "induces proliferation and/or accumulation of regulatory T cells."

3. Plaintiffs also fail to plausibly allege that Vowst® comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa." At most, Plaintiffs allege that Vowst® comprises strains of multiple bacteria, including from the *Clostridium* genus, which the Asserted Patents describe as many and varied in their properties. Against that backdrop, Plaintiffs' allegation that Vowst® comprises bacteria from the *Clostridium* genus generally, does not amount to a plausible allegation that Vowst® comprises—as required by the claims—strains belonging the specific *Clostridium* clusters IV and XIVa.

## III. STATEMENT OF FACTS

### A. The Asserted Patents

The Asserted Patents are directed to pharmaceutical compositions and associated methods for inducing the proliferation and/or accumulation of regulatory T cells. *See, e.g.*, '652 patent at 1:18-26. All claims of the Asserted Patents recite a "pharmaceutical composition" that: (1) "induces proliferation and/or accumulation of regulatory T cells;"[2] and/or (2) comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa."[3]

Two of the five Asserted Patents (the '381 and '519 patents) explicitly require that the composition "induces proliferation and/or accumulation of regulatory T cells." Independent claim 1 of the '381 patent is illustrative:

> 1. A method of treating a human subject having an infectious disease, an autoimmune disease or an allergic disease, the method comprising administering to the subject a pharmaceutical composition comprising a spore-forming fraction of human fecal matter, wherein ***the composition induces proliferation and/or accumulation of regulatory T cells***, and wherein the composition is formulated for oral administration.

'381 patent, claim 1 (emphasis added). Because this is a requirement of claim 1, it is a requirement for all other claims of the '381 patent, which all depend from claim 1. *See* '381 patent, claims 2-12 (depending from claim 1). Independent claims 1, 9, and 17 of the '519 patent also require a composition that "induces proliferation and/or accumulation of regulatory T cells." '519 patent, claims 1, 9, and 17. All other claims of the '519 patent, which depend from one of claims 1, 9, or

---

[2] '381 patent, claims 1-12; '519 patent, claims 1-28; *see also* '978 patent, claims 1-17 and '343 patent, claims 1-33 (requiring, *inter alia*, that the composition comprise one or more bacterial strains from *Clostridium* clusters IV or XIVa that "induce[] proliferation and/or accumulation of regulatory T cells").

[3] '652 patent, claims 1-13; '978 patent, claims 1-17; and '343 patent, claims 1-33.

17, contain this requirement as well. '519 patent, claims 2-8 and 27 (depending from claim 1), 10-16 and 28 (depending from claim 9), and 18-26 (depending from claim 17).

Three of the five Asserted Patents (the '652, '978, and '343 patents) require that the composition comprise bacterial strain(s) "belonging to *Clostridium* clusters IV and/or XIVa." The '652 patent requires at least two such strains, as recited in claim 1:

> 1. A method of treating a human subject having an infectious disease, an autoimmune disease, or an allergic disease, the method comprising administering a pharmaceutical composition comprising a purified bacterial mixture of at least two live bacterial strains belonging to ***Clostridium clusters IV and/or XIVa*** to the human subject, wherein the bacterial strains are spore-forming bacteria and are isolated from a human.

'652 patent, claim 1 (emphasis added). This is a requirement of all other claims of the '652 patent, which all depend from claim 1. '652 patent, claims 2-13 (depending from claim 1).

The '978 and '343 patents require both (1) that one or more bacterial strains "belonging to *Clostridium* clusters IV or XIVa" and also (2) that such strain(s) "induce[] proliferation and/or accumulation of regulatory T cells," as illustrated by claim 1 of the '978 patent:

> 1. A pharmaceutical composition, comprising one or more purified live bacterial strains belonging to ***Clostridium clusters IV or XIVa***, wherein the one or more bacterial strains ***induces proliferation and/or accumulation of regulatory T cells***, wherein the one or more bacterial strains are isolated from a human, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

'978 patent, claim 1 (emphasis added); '978 patent, claims 2-17 (depending from claim 1); '343 patent, claims 1 and 18 (requiring, *inter alia*, "one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa"); '343 patent, claims 2-17 (depending from claim 1) and 19-33 (depending from claim 18).

### B. Plaintiffs' Infringement Allegations

Plaintiffs assert that US Defendants' activities related to Vowst® directly and/or indirectly infringe the Asserted Patents. Whether direct or indirect, all of Plaintiffs' infringement claims depend on the allegation that Vowst® is a "pharmaceutical composition" that: (1) "induces proliferation and/or accumulation of regulatory T cells;" or (2) comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa." All of the Asserted Patents' claims contain one or both[4] of these requirements.

Plaintiffs assert direct infringement of the '519, '978, and '343 patents, each of which contains claims directed to a pharmaceutical composition that: (1) "induces proliferation and/or accumulation of regulatory T cells" and/or (2) comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa." Plaintiffs allege that Vowst® is a pharmaceutical composition covered by one or more of these claims. D.I. 16 ¶¶ 127, 142, 159. Plaintiffs further allege that Seres along with Aimmune and NHC Nutrition (by virtue of an alleged "license agreement between Seres and Nestlé"[5]) manufacture, market, distribute, use, offer for sale, and sell Vowst® throughout the U.S. *See id.* ¶¶ 88-94. On that basis, Plaintiffs allege that US Defendants directly infringe the '519, '978, and '343 patents. *See id.* ¶¶ 125, 140, 157 (asserting infringement under 35 U.S.C. § 271(a)).

---

[4] As noted *supra*, the '978 and '343 patents require, *inter alia*, a pharmaceutical composition that comprises at least one bacterial strain "belonging to *Clostridium* clusters IV or XIVa" that "induces the proliferation and/or accumulation of regulatory T cells."

[5] Plaintiffs' FAC defines "Nestlé" as including each of the ex-US Defendants, Aimmune, and NHC Nutrition. FAC ¶ 17. But, according to Plaintiffs' own cited support, the alleged "license agreement between Seres and Nestlé" is only between Seres and NHS Rx. *See id.* ¶ 92 (citing "Seres' November 2023 10-Q," which identifies a "License Agreement . . . with NHSc Rx License GmbH").

Plaintiffs assert induced infringement of the five Asserted Patents, each of which contains claims directed to pharmaceutical compositions and/or related methods of treatment that recite requirements that the composition: (1) "induces proliferation and/or accumulation of regulatory T cells;" and/or (2) comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa." Plaintiffs allege that the use of Vowst® to prevent *Clostridioides difficile* is covered by one or more claims of the Asserted Patents. D.I. 16 ¶¶ 103, 115, 128, 143, 160. Plaintiffs further allege that Seres along with Aimmune and NHC Nutrition, by virtue of the aforementioned "license agreement between Seres and Nestlé," commercially market, distribute, offer for sale, and sell Vowst® throughout the U.S. with the specific intent that healthcare providers and patients use Vowst® "to treat infection, according to the methods of the Asserted Patents." *Id.* ¶¶ 88-96. On that basis, Plaintiffs allege induced infringement of the Asserted Patents by US Defendants. *Id.* ¶¶ 102, 108, 119, 126, 132, 134, 141, 151, 158, 168 (asserting infringement under 35 U.S.C. § 271(b)).

## IV. LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to state a claim for relief is subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6).

To survive a motion for dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff, but the Court is not required to accept the plaintiff's legal conclusions as true. *Id.* The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

In deciding a motion to dismiss, the Court may look not only to the allegations in a complaint, but also, *inter alia*, to attached exhibits, documents relied upon in the complaint, and matters of public record. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, No. 14-1482-SLR, 2015 WL 4477700, at *2 (D. Del. July 22, 2015). It is further proper for the Court to rely on "document[s] integral to or explicitly relied on in the complaint." *See In re Burlington Coat Factory*, 114 F. 3d at 1426 ("The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint.") (citation omitted, cleaned up). On the same rationale, it is proper to rely on documents attached to an original complaint but not also attached to the amended complaint. *See, e.g.*, *New Jersey Second Amend. Soc'y v. New Jersey Press Ass'n*, No. 20-5228, 2021 WL 4822050, at *5 (D.N.J. Oct. 15, 2021) (citing *In re Burlington Coat Factory*, 114 F. 3d at 1426).

**B. Direct and Indirect Patent Infringement**

Infringement claims are subject to the *Twombly*/*Iqbal* standard. *Raindance Technologies, Inc. v .10x Genomics, Inc.*, No. 15-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016); *Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 714 (Fed. Cir. 2018). A complaint must allege facts that "plausibly indicate that the accused products contain each of the limitations found in the claims."

*SuperInterconnect Techs. LLC v. HP Inc.*, No. 19-169, 2019 WL 6895877, at *1 (D. Del. Dec. 18, 2019) (internal quotations and citations omitted).

For direct infringement, "a patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly*/*Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element." *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, No. 17-506-LPS-CJB, 2018 WL 11182741 (D. Del. Jan. 3, 2018). "[A] plaintiff must generally do more than assert that the accused product meets the claim elements; it must show how the defendant plausibly infringes by alleging some facts connecting the accused product to the claim elements." *Swirlate IP LLC v. Keep Truckin, Inc.*, No. 20-1283-CFC, 2021 WL 3187571, at *1 (D. Del. July 28, 2021) (citing *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017)).

In order to prevail on a claim for induced infringement, a plaintiff must first establish liability for direct infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("Inducement liability may arise if, but only if, there is direct infringement.") (citation omitted, cleaned up).

## V. ARGUMENT

### A. Plaintiffs Fail to State a Claim for Infringement

All claims of the Asserted Patents require a pharmaceutical composition that: (1) "induces proliferation and/or accumulation of regulatory T cells" and/or (2) comprises bacterial strains

belonging to "*Clostridium* clusters IV and/or XIVa." Because Plaintiffs do not plausibly allege that Vowst® meets either of these claim requirements, their complaint should be dismissed.

### 1. Plaintiffs Do Not Plausibly Allege That Vowst® "Induces Proliferation and/or Accumulation of Regulatory T Cells"

Each claim of the '381, '519, '978, and '343 patents requires that the claimed compositions "induce[] proliferation and/or accumulation of regulatory T cells." *See* '381 patent, claims 1-12; '519 patent, claims 1-28; '978 patent, claims 1-17; '343 patent, claims 1-33.

The entirety of Plaintiffs' allegations in this regard appear in paragraph 86 of its FAC, which states:

> 86. Upon information and belief, the live bacterial strains in Vowst® induce proliferation and/or accumulation of regulatory T cells in the human administered Vowst®. Upon information and belief, butyrate supports proliferation and/or accumulation of regulatory T-cells. Upon further information and belief, Vowst® increases butyrate levels.

D.I. 16 ¶ 86. At most, Plaintiffs allege that: (1) Vowst® increases butryate levels and (2) butyrate purportedly "supports" proliferation and/or accumulation of regulatory T-cells. This does not amount to a plausible allegation that Vowst®—or anything in Vowst®—"induces proliferation and/or accumulation of regulatory T cells."

Plaintiffs' bald assertion that Vowst® "induces proliferation and/or accumulation of regulatory T cells in the human administered Vowst" is entirely conclusory, without any cited support. Simply stating that the accused product contains each recited claim element is insufficient to plausibly allege infringement. *See Twombly*, 550 U.S. at 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Indeed, courts have dismissed infringement claims for threadbare recitations such as these. *See Promos Techs., Inc. v. Samsung Elecs. Co.*, No. 18-307-RGA, 2018

WL 5630585, at *4 (D. Del. Oct. 31, 2018) (dismissing direct infringement claims for failure to "move beyond the legal conclusions that [the accused] products infringe the [asserted] patents because they are comprised of all elements in the claim"); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1044 (N.D. Cal. 2022) (dismissing claim of infringement where plaintiff "merely point[ed] the Court to the claim limitations it laid out in [other asserted] patents, but neither show[ed] the direct message claim limitation present in the [accused] products."). Plaintiffs' unsupported assertion that Vowst® "induces proliferation and/or accumulation of regulatory T cells" is similarly deficient.

Indeed, this allegation draws no support from any of the exhibits attached to Plaintiffs' original Complaint that purport to describe Vowst®.[6] In fact, the Asserted Patents do not teach anything regarding butyrate and T-cell proliferation and/or accumulation. And none of these exhibits mention "regulatory T cells," much less any alleged effect of Vowst® on their accumulation and/or proliferation. *See, e.g.*, Exs. F-I, K-N. If anything, the full prescribing information for Vowst® (which Plaintiffs attached as Exhibit G to their original Complaint) belies any connection between the clinical effects of Vowst® and its mechanism of action (e.g., by inducing proliferation and/or accumulation or regulatory T cells), explicitly stating:

> **12.1 Mechanism of Action**
>
> The mechanism of action of VOWST has not been established.

[6] Plaintiffs' Complaint (D.I. 1) attached exhibits in support of its infringement allegations. *See, e.g.*, D.I. 1 ¶¶ 63-88 (citing Exhibits F through N). Plaintiffs' FAC repeats the same infringement allegations but omits citation to these exhibits. *See, e.g.*, D.I. 16 ¶¶ 75-100. Reliance on the exhibits attached to Plaintiffs' original Complaint is nonetheless proper. *See In re Burlington Coat Factory*, 114 F. 3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them.").

D.I. 1-7 at 7 (emphasis added). Plaintiffs' bare allegation that Vowst® "induces proliferation and/or accumulation of regulatory T cells" is thus devoid of any factual support, even from Plaintiffs' own cited exhibits.

Plaintiffs' attempted reliance on a purported relationship between butyrate levels, Vowst®, and inducement of regulatory T cell proliferation and/or accumulation fares no better. Plaintiffs allege that Vowst® increases butyrate levels and that butyrate "***supports***" the proliferation and/or accumulation of regulatory T-cells. D.I. 16 ¶ 86. An allegation that butyrate "supports" such proliferation and/or accumulation is not, however, an allegation that Vowst® "induces"—as required by the claims—proliferation and/or accumulation. In any event, these allegations lack credibility in light of the Asserted Patents' disclosure and Plaintiffs' own cited exhibits.

The Asserted Patents' complete silence on butyrate underscores the implausibility of Plaintiffs' allegations. According to Plaintiffs, the Asserted Patents represent the culmination of substantial resources, effort, and research on the inducement of regulatory T cell proliferation and/or accumulation. *See* D.I. 16 ¶¶ 38-74; *id.* ¶ 39 ("The inventors were motivated to discover a mechanism to induce the proliferation or accumulation of regulatory T cells."). Yet nowhere in the Asserted Patents' description of the alleged invention is there any mention of butyrate whatsoever, much less any discussion of its purported role in regulatory T cell proliferation and/or accumulation. *See* D.I. 1-1, 1-2, 1-3, 1-4, and 1-5. The Asserted Patents' complete silence in this regard is at odds with—and renders implausible—Plaintiffs' allegations that butyrate is important to the claimed subject matter.

Nor do Plaintiffs' cited exhibits provide any basis for Plaintiffs' theory that butyrate "supports" proliferation and/or accumulation of regulatory T cells. Specifically, Plaintiffs cite Exhibit H in support of the allegation that Vowst® increases butyrate levels. D.I. 1 ¶ 74. Exhibit

H purports to describe the results of a clinical study involving "SER-109," which Plaintiffs allege is an internal Seres code for the active ingredient, fecal microbiota spores, live-brpk, in Vowst®. *See* D.I. 1 ¶ 69. Notably, Exhibit H contains no mention of "regulatory T cells," much less any effect of SER-109 on regulatory T cells. At most, Exhibit H indicates that patients who received SER-109 had higher levels of several compounds, not just butyrate, than patients who received a placebo. *See* Ex. H (D.I. 1-8) at 2. Exhibit H does not single out butyrate, or even purport to attribute any clinical effects to increased levels of butyrate alone. Nor does Exhibit H support any connection between butyrate levels and the inducement of regulatory T cell proliferation and/or accumulation; Exhibit H is completely silent with respect to regulatory T cells. The observations made in Exhibit H do not support any alleged link between Vowst® and the inducement of regulatory T cell proliferation and/or accumulation.

Exhibit J, which Plaintiffs cite for the allegation that butyrate "supports" proliferation and/or accumulation of regulatory T cells, has nothing do with Vowst® or its active ingredient. Exhibit J is a research article that describes studies in mice, none of which were administered Vowst® or SER-109. *See* Ex. J (D.I. 1-10). Thus, Exhibit J is entirely silent on any effects of Vowst® or SER-109, much less the effects on regulatory T cells in "a human patient."[7] And, as already mentioned, Plaintiffs do not even purport to allege the Exhibit J supports an allegation that Vowst®—as required by the claims—"induces" the proliferation and/or accumulation of regulatory T-cells. *See* D.I. 1 ¶ 74 (alleging, at most, that butyrate "supports" proliferation and/or accumulation).

[7] The Asserted Patents are directed to, *inter alia*, methods of "treating a human patient." *See, e.g.*, '381 patent, claim 1 (reciting "[a] method of treating a human subject").

Indeed, Exhibit J is not even consistent with the allegation that butyrate "supports" proliferation and/or accumulation of regulatory T cells. To the contrary, Exhibit J states that "butyrate did ***not*** affect the survival or the proliferation of colonic $T_{reg}$ cells." Ex. J (D.I. 1-10) at 2 (emphasis added). Exhibit J, alone or in combination with Exhibit H, does not plausibly suggest that the accused product in this litigation "induces proliferation and/or accumulation of regulatory T cells."

Plaintiffs do not plausibly allege that Vowst® or its active ingredient "induces proliferation and/or accumulation of regulatory T cells. Plaintiffs' claims of infringement of the '381, '519, '978, and '343 patents should be dismissed accordingly.

### 2. Plaintiffs Do Not Plausibly Allege That Vowst® Comprises "*Clostridium* Clusters IV or XIVa"

The '652, '978, and '343 patents all require that the claimed compositions specifically comprise one or more purified live bacterial strains "belonging to *Clostridium* clusters IV or XIVa." *See* '652 patent, claims 1-13; '978 patent, claims 1-17; and '343 patent, claims 1-33. Plaintiffs fail to plausibly allege that Vowst® meets this claim requirement.

Plaintiffs' allegation that Vowst® comprises strain(s) from the required *Clostridium* clusters are conclusory and unsupported. Plaintiffs allege only that, "at least some of the live bacterial strains in Vowst® belong to *Clostridium* clusters IV and/or XIVa." D.I. 16 ¶ 85. In support, Plaintiffs cite a table ("Table S3") excerpted from a "Supplementary Appendix" to a journal article. D.I. 16 ¶ 85; *see also* D.I. 1 ¶ 73 (citing the Supplementary Appendix as Exhibit I). Table S3, which is excerpted in Plaintiffs' FAC, lists approximately 77 different genera of organisms purportedly identified in SER-109, of which only one is "*Clostridium*." *See* Ex. I (D.I. 1-9) at 9-11. Table S3 and the remainder of Exhibit I is entirely silent as to the presence of the specifically claimed *Clostridium* clusters IV or XIVa. There is no basis in Table S3, or the

Supplementary Appendix from which it is derived, for Plaintiffs' conclusory allegation that Vowst® comprises the specifically claimed clusters.

Plaintiffs' allegations with respect to the members of the *Clostridium* genus do not suffice. As the Asserted Patents describe, "*Clostridium*" refers to an entire genus of bacteria, comprising multiple different clusters, each cluster comprising multiple different bacterial strains. *See, e.g.*, '652 patent at 11:42-12:22; *see also id.* at Fig. 49 (identifying cluster I, cluster XIVa, cluster IV, and cluster III, each cluster comprising multiple different strains). The Asserted Patents purport to describe 46 different bacterial strains in the genus, and they state that "[a]ny number or combination of strains that proves effective (e.g., any number from one to 200 . . .) can be administered." '652 patent at 12:6-22. The Asserted Patents moreover indicate that different strains within the genus "vary widely" in their effects:

> The type and number to be used can be determined based on a variety of factors (e.g., the desired effect, such as induction or inhibition of proliferation or accumulation of regulatory T cells; the disease or condition to be treated, prevented or reduced in severity; the age or gender of the recipient).

*Id.* at 11:61-66. Given the size and variability among bacterial strains within the *Clostridium* genus, Plaintiffs' allegation that Vowst® comprises the *Clostridium* genus does not render plausible the presence of the specifically recited clusters.

Plaintiffs not only fail to plausibly allege that Vowst® comprises bacterial strains from cluster IV and/or cluster XIVa, but also that such strains induce the proliferation or accumulation of regulatory T cells. The Asserted Patents state that "[t]he 'bacteria belonging to the genus *Clostridium*,' which are the active ingredient in the composition of the present invention, is not particularly limited as long as the bacteria have the effect of inducing proliferation or accumulation of regulatory T cells." '652 patent at 11:42-46. Even if the presence of "*Clostridium*," generally, were sufficient to render plausible presence of bacterial strains from *Clostridium* clusters IV and/or

XIVa (it is not, for reasons already discussed), Plaintiffs do not allege that those bacterial strains have the effect of inducing proliferation and/or accumulation of regulatory T cells. As discussed *supra*, Plaintiffs fail to plausibly allege that Vowst® induces such proliferation and/or accumulation, much less due to the presence of *Clostridium* bacteria.

Plaintiffs fail to plausibly allege that Vowst® comprises bacterial strains from *Clostridium* clusters IV and/or XIVa. Plaintiffs' claims of infringement of the '652, '978, and '343 patents should be dismissed accordingly.

## VI. CONCLUSION

The Asserted Patents all require a pharmaceutical composition that: (1) "induces proliferation and/or accumulation of regulatory T cells" and/or (2) comprises bacterial strains "belonging to *Clostridium* clusters IV and/or XIVa." All of Plaintiffs' claimss of direct infringement and indirect infringement are based on the assertion that Vowst® is a pharmaceutical composition that meets these requirements. Yet Plaintiffs' complaint fails to plausibly allege that Vowst®—the product accused of infringement—meets either of these requirements. For that reason, Plaintiffs' complaint for patent infringement should be dismissed in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants*

March 3, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 3, 2025, upon the following in the manner indicated:

Daniel A. O'Brien
VENABLE LLP
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Dominick A. Conde
Damien N. Dombrowski
Joshua D. Calabro
VENABLE LLP
151 West 42nd Street
New York, NY 10036
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)