IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEDANTA BIOSCIENCES INC. and THE UNIVERSITY OF TOKYO,<br><br>Plaintiffs,<br><br>v.<br><br>SERES THERAPEUTICS INC., NESTLÉ S.A., SOCIÉTÉ DES PRODUITS NESTLÉ S.A., NESTLÉ HEALTH SCIENCE S.A., NHSC RX LICENSE GMBH, AIMMUNE THERAPEUTICS, INC., and NESTLE HEALTHCARE NUTRITION, INC.,<br><br>Defendants. | C.A. No. 24-957 (RGA) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS SERES THERAPEUTICS, INC., AIMMUNE THERAPEUTICS, INC., AND NESTLE HEALTHCARE NUTRITION, INC.'S MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants*

March 24, 2025

# TABLE OF CONTENTS

**Page**


I. SUMMARY OF THE ARGUMENT ........................................................................1

II. ARGUMENT IN REPLY ....................................................................................1

A. The Court Should Reject Plaintiffs' Attempted Obfuscation of US Defendants' Arguments and the Legal Standard ....................................................2

B. Plaintiffs Allege No Plausible Basis for Their Claim That Vowst® Meets the "Induces . . . Regulatory T Cells" Limitation ....................................................4

C. Plaintiffs Allege No Plausible Basis for Their Claim That Vowst® Comprises "Clusters IV and/or XIVa" ....................................................9

III. CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
974 F.2d 1358 (3d Cir. 1992).......................................8

*BioMérieux, S.A. v. Hologic, Inc.*,
No. 18-21, 2018 WL 4603267 (D. Del. Sept. 25, 2018).......................................3

*In re Burlington Coat Factory Secs. Litig.*,
114 F.3d 1410 (3d Cir. 1997).......................................8

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018).......................................8

*DermaFocus LLC v. Ulthera, Inc.*,
201 F. Supp. 3d 465 (D. Del. 2016).......................................3

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018).......................................4

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*,
700 F. Supp. 3d 189 (D. Del. 2023).......................................3

*Earin AB v. Skullcandy, Inc.*,
No. 24-275-RGA, 2024 WL 4791588 (D. Del. Nov. 14, 2024).......................................4

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*,
72 F. Supp. 3d 521 (D. Del. 2014), *aff'd sub nom. Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016).......................................7

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000).......................................8

*Lamont v. Time Warner, Inc.*,
No. 12-8030, 2012 WL 5248061 (C.D. Cal. Oct. 19, 2012).......................................8

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) .......................................1, 4

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) .......................................4

*SuperInterconnect Techs. LLC v. HP Inc.*,
No. 19-169, 2019 WL 6895877 (D. Del. Dec. 18, 2019) .......................................3, 5

*Swirlate IP LLC v. Keep Truckin, Inc.*,
No. 20-1283-CFC, 2021 WL 3187571 (D. Del. July 28, 2021) ................................................4

**Rules**

Rule 12(b)(6)..........................................................................................................................1, 7

## I. SUMMARY OF THE ARGUMENT

Defendants Seres Therapeutics, Inc., Aimmune Therapeutics, Inc., and Nestlé Healthcare Nutrition, Inc. (collectively, the "US Defendants") herein reply to Plaintiffs' Answering Brief in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss the First Amended Complaint ("Plaintiffs' opposition").

Plaintiffs' opposition affirms the insufficiency of their infringement pleadings and further supports dismissal. As set forth in the US Defendants' opening brief, Plaintiffs' FAC fails to plausibly allege that Vowst®, the product accused of infringement, meets essential claim requirements, namely that it: (1) induces proliferation and/or accumulation of regulatory T cells; and (2) comprises *Clostridium* clusters IV and/or XIVa. Plaintiffs argue that they have plausibly alleged the presence of the above-cited claim requirements because Vowst® allegedly contains spore-forming bacteria from human fecal matter. But representations regarding the invention by co-plaintiff and owner of the Asserted Patents, the University of Tokyo, foreclose the plausibility of Plaintiffs' arguments in its answering brief. The Court should dismiss Plaintiffs' FAC in its entirety.

## II. ARGUMENT IN REPLY

There is no dispute that the *Iqbal/Twombly* standard applies in assessing the adequacy of infringement claims that are subject to dismissal under Rule 12(b)(6). *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, No. 17-506-LPS-CJB, 2018 WL 11182741 (D. Del. Jan. 3, 2018); D.I. 21 at 4. Nor can it be disputed that "a patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element." *Id.* at *2.

Plaintiffs' FAC baldly states—without alleging any plausible factual basis—that Vowst® (1) induces the proliferation and/or accumulation of regulatory T cells; and (2) comprises bacterial strains from *Clostridium* clusters IV and/or XIVa. Plaintiffs identify nothing that directly supports an allegation that Vowst® meets either of these claim elements. At most, Plaintiffs ask the Court to infer plausibility based on other alleged features of Vowst®. But binding statements by the University of Tokyo, co-plaintiff and owner of the Asserted Patents, foreclose the plausibility of such inferences. For that reason, the Court should dismiss Plaintiffs' infringement claims as set forth in its FAC, which fails to allege a plausible factual basis that Vowst® meets the essential claim requirements.

**A. The Court Should Reject Plaintiffs' Attempted Obfuscation of US Defendants' Arguments and the Legal Standard**

Plaintiffs devote much of their opposition to "legal standards." *See* D.I. 21 at 4-7. As already discussed, there appears to be no dispute that the *Iqbal/Twombly* standard applies to the present analysis. Plaintiffs accuse US Defendants of relying on the wrong standard and argue that a "more liberal" standard is applicable here. The Court should reject both of these suggestions.

First, the US Defendants do not—as Plaintiffs suggest—seek dismissal of Plaintiffs' FAC for failure to provide "specific details" of how Vowst® "map[s] to each element." *See* D.I. 21 at 5. Instead, US Defendants submit that Plaintiffs' FAC fails to plausibly claim that Vowst® meets the two claim requirements that are present in—and threshold to any infringement determination of—every claim of the Asserted Patents. *See* D.I. 19 at 8-9. In their opposition, Plaintiffs do not dispute that one or both of these requirements is or are present in every claim of the Asserted Patents. And as discussed *infra*, Plaintiffs' opposition affirms that their FAC alleges no plausible factual basis to claim that Vowst® meets either requirement. Ruling on US Defendants' motion

to dismiss does not, therefore, implicate issues of claim construction or expert discovery. See D.I. 21 at 1.

Second, Plaintiffs' suggestion that the *Iqbal/Twombly* standard should be "more liberal" where the accused product is "not readily available for purchase" is without merit. *See* D.I. 21 at 5. As an initial matter, Vowst® is available. Regardless, the "availab[ility]" of an accused product does not dictate the pleading standard, much less relax the *Iqbal/Twombly* standard. Indeed, in each of Plaintiffs' cited cases, the *Iqbal/Twombly* standard applied in evaluating the plausibility of infringement claims. *See DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 198 (D. Del. 2023) (in applying the *Iqbal/Twombly* standard, declining to impose heightened requirements); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469, 470 n.9 (D. Del. 2016) (requiring "sufficient information to allow the court to determine plausibility"); and *BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21, 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018) (citation omitted) (finding a plausible basis for infringement based on public documents, such as "examples drawn from product documentation, demonstration and informational videos, user manuals, and/or promotional materials demonstrating the alleged use of some aspect of the accused product of the products performing at least some of the requirements of the representative claim"). Plaintiffs' argument that some "more liberal" standard should apply here is legally baseless.

Third, Plaintiffs ignore authority cited by US Defendants that requires—beyond mere identification of the accused product and certain of its characteristics—a plausible factual basis for infringement. Plaintiffs do not address *SuperInterconnect*, where the Court dismissed claims of direct infringement that alleged characteristics of the accused devices without "explain[ing] how those characteristics connect to the asserted claims." *SuperInterconnect Techs. LLC v. HP*

*Inc.*, No. 19-169, 2019 WL 6895877, at *2 (D. Del. Dec. 18, 2019). Nor do Plaintiffs address *Swirlate*, where the Court dismissed direct infringement claims that "fail[ed] to allege facts showing how the accused product performs each step of each claim element." *See Swirlate IP LLC v. Keep Truckin, Inc.*, No. 20-1283-CFC, 2021 WL 3187571, at *2 (D. Del. July 28, 2021). As the court stated in *North Star Innovations* (which Plaintiffs also ignore), "[t]here needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so." *N. Star Innovations, Inc.*, 2017 WL 5501489 at *2 (emphasis in original).[1] Plaintiffs fail to provide such articulation here.[2]

### B. Plaintiffs Allege No Plausible Basis for Their Claim That Vowst® Meets the "Induces . . . Regulatory T Cells" Limitation

Plaintiffs do not dispute that each claim of the '381, '519, '978, and '343 patents requires compositions that "induce[] proliferation and/or accumulation of regulatory T cells." Plaintiffs identify no plausible factual basis in the FAC that Vowst® meets this claim requirement.

In response to US Defendants' observation that the entirety of allegations in this regard appear in paragraph 86 of their FAC, Plaintiffs cite: (1) Plaintiffs' own summary description of the alleged inventions of the Asserted Patents in their FAC, namely the sections titled

---

[1] *See also Promos Techs., Inc. v. Samsung Elecs. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) ("The slight alterations to the claim language by using other well-known nomenclature to describe Defendants' products do nothing to articulate why the accused class of Samsung DRAM products infringe the asserted patents . . . . Plaintiff's Complaint fails to move beyond the legal conclusions that Samsung DRAM products infringe the [asserted] patents because they are comprised of all elements in the claim.").

[2] Plaintiffs' reliance on *Earin* and *Disc Disease* ignores that, in each of these cases, the technology at issue was "simple," which informed the analysis. *See Earin AB v. Skullcandy, Inc.*, No. 24-275-RGA, 2024 WL 4791588, at *2 (D. Del. Nov. 14, 2024); *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Indeed, this Court has distinguished *Disc Disease* on that basis. *See, e.g.*, *Swirlate IP LLC*, 2021 WL 3187571, at *2. Plaintiffs do not characterize the technology of their Asserted Patents as simple.

"Background of the Invention" and "Novelty and Advantages of the Invention" (D.I. 16 ¶¶ 38-44); and (2) Example 18 of the Asserted Patents (Ex. A at 41:25-42:60). D.I. 21 at 7-8. Neither citation even purports to reflect any characteristics of Vowst®, much less render plausible Plaintiffs' claim that Vowst® "induces proliferation and/or accumulation of regulatory T cells."

Plaintiffs cannot remedy their pleading deficiency by relying on their own characterization of the alleged inventions. First, the cited sections of the FAC reflect Plaintiffs' self-serving, summary description of the alleged invention and alleged efforts of the inventors. *See* D.I. 16 ¶¶ 38-44. They have nothing to do with Vowst®, much less that Vowst® "induces proliferation and/or accumulation of regulatory T cells." *See id.* Second, in citing their own description of the alleged inventions, Plaintiffs invite the incorrect analysis. The proper analysis evaluates the sufficiency of Plaintiffs' infringement claims against the Asserted Patents' claims, not against Plaintiffs' subjective interpretation of their scope. *See SuperInterconnect*, 2019 WL 6895877, at *1 (a complaint must allege facts that "plausibly indicate that the accused products contain each of the limitations ***found in the claims***" (emphasis added) (citation omitted)). To the extent that Plaintiffs ask the Court to assess the sufficiency of their pleadings against Plaintiffs' subjective interpretation of claim scope, that is improper.[3]

Example 18 of the Asserted Patents cannot remedy Plaintiffs' pleading deficiency. As an initial matter, ***Plaintiffs' FAC does not reference Example 18*** of the Asserted Patents as basis for its claims of infringement. *See* D.I. 16 at ¶¶ 38-44. Regardless, ***Example 18 has nothing to do with Vowst®***, much less plausibly asserts that Vowst® "induces proliferation and/or

---

[3] As already discussed, US Defendants' motion does not implicate claim construction issues. And Plaintiffs appear to agree that invoking issues of claim construction in this context is improper. *See* D.I. 21 at 2 (Plaintiffs objecting to US Defendants' motion on the grounds that it "implicates fact and expert discovery and claim construction.").

accumulation of regulatory T cells." *See* Ex. A at 41:25-42:60. Rather, Example 18 purports to reflect the results of a specific investigation, conducted in mice, on "whether or not a spore-forming (for example, a chloroform resistant) fraction of a fecal sample obtained from humans had the effect of inducing proliferation or accumulation of regulatory T cells." *Id.* at 41:25-31. Plaintiffs do not (and cannot) plausibly allege that the composition of Example 18 is Vowst® or that it is the same as Vowst®. Example 18 reports that, "when the spore-forming (for example, the chloroform resistant) fraction of human intestinal bacteria was colonized in GF mice, the accumulation of Foxp3$^+$ regulatory ($T_{reg}$) cells in the colonic lamina propria of the mice was induced" and that "mice gavaged with chloroform-treated human stool exhibited high amounts of spore-forming bacteria, such as *Clostridium* clusters XIVa and IV." *Id.* at 42:8-13, 42:54-58. To the extent that Example 18 purports to describe the claimed effect, it is in the context of an animal study, and the effect is reported with respect to Foxp3$^+$ regulatory T cells.

Plaintiffs take the leap from Example 18 to argue that Vowst® "induces proliferation and/or accumulation of regulatory T cells." Plaintiffs cite allegations in their FAC that Vowst® contains spore-forming bacteria from human fecal matter. D.I. 21 at 8. Plaintiffs essentially argue that because the preparations of Example 18 also comprise spore-forming bacteria from human fecal matter, it is plausible to infer that Vowst® exhibits the same "induc[ing]" effect that is reported for Example 18. *Id.* The plausibility of this inference depends on: (1) alleged similarity in the composition of Vowst® as compared to the compositions of Example 18; and (2) whether bacteria isolated from human fecal matter necessarily results in the claimed effect.

On the first point, Plaintiffs fail to plausibly allege that Vowst® is similar to the compositions of Example 18. At most, Plaintiffs allege that the two are made in a "similar" manner. D.I. 21 at 8 (citing D.I. 16 ¶¶ 81-84). But the cited passages of Plaintiffs' FAC say

nothing about how the active ingredient in Vowst® is isolated from human fecal matter, much less render it plausible that such isolation bears any relationship to the claimed ***method*** of inducing regulatory T cell growth. *See* D.I. 16 ¶¶ 81-84.

On the second point, Plaintiffs assert that scientific literature "connects increased butyrate levels from gut microbes to induction of regulatory T cells," and that "[t]his additional factual allegation also plausibly connects Vowst® to the 'induces . . . regulatory T cells' claim limitation." D.I. 21 at 8. But statements by the University of Tokyo (co-plaintiff and owner of the Asserted Patents) in proceedings that Plaintiffs explicitly reference in their FAC[4] indicate the contrary—i.e., that the presence of such bacteria "does not amount to a teaching" of induction of regulatory T cell growth:

> The mere fact that, e.g., Fig. 3B shows that, e.g., whole faeces of conventional mice, human stools, or the stools of mice colonised by either cultured or human flora, contain representatives of these clusters alongside various other bacteria ***does not amount to a teaching*** as in the Patent specifically ***linking*** these bacteria to the effect of ***inducing*** Foxp3 positive ***regulatory T cells*** and their use to achieve this effect in the treatment of relevant diseases.

Reply of the patent proprietor to the notice(s) of opposition (March 5, 2018) at 71, Opp. proc. against EP 2575835 B1 / 11728077.6 (hereinafter, "Ex. A") (emphasis added). The Court may consider matters of public record, including prosecution histories, in deciding a motion to dismiss under Rule 12(b)(6). *See Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014), *aff'd sub nom. Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369

---

[4] D.I. 16 ¶ 98 (referencing a proceeding concerning a patent entitled, "Composition for inducing proliferation or accumulation of regulatory T cells," and which Plaintiffs describe as "the EPO entry of PCT/JP2011/063302, the application to which all of the Asserted Patents claim priority."); D.I. 1-13 at 54 (referencing proceeding for "European Patent No. 2 575 835 B1"). Plaintiffs refer to this proceeding in their FAC as well as in their opposition. *See* D.I. 21 at 3-4 (citing D.I. 16 ¶ 98).

(Fed. Cir. 2016) ("A court may also take judicial notice of the prosecution histories, which are 'public records.'").[5] A court may rely upon matters where, as here, they are explicitly referenced and relied upon in a complaint. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court may therefore consider the University of Tokyo's statements in these proceedings, which negate Plaintiffs' urged inference that the bacteria allegedly present in Vowst® results in the claimed effect. *See* D.I. 21 at 8.

Plaintiffs' other argument—that increased butyrate levels are connected with the claimed effect—fares no better. Plaintiffs do not dispute that the Asserted Patents are entirely silent on any role of butyrate on regulatory T cell growth. Plaintiffs' opposition accuses US Defendants of seeking "credibility" determinations and restates the supposed connection between butyrate levels and induction of regulatory T cell growth, relying on the same references cited in their FAC. *See* D.I. 21 at 6, 8. US Defendants do not seek a "credibility" determination but rather argue implausibility based on the Asserted Patents' silence on the issue, among other reasons.[6] For reasons already discussed, Plaintiffs' cited references are inadequate. *See* D.I. 19 at 11-13.

The University of Tokyo's own statements in foreign patent proceedings regarding the invention moreover negate Plaintiffs' urged inference. Specifically, the University of Tokyo has

---

[5] *See also Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct."); *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (taking into consideration "articles included in the prosecution history" on its de novo review of a motion on the pleadings because they were "public records"); *Lamont v. Time Warner, Inc.*, No. 12-8030, 2012 WL 5248061, at *2 n.2 (C.D. Cal. Oct. 19, 2012) (granting judicial notice to "extract from the Register of European Patents" and an international patent application because they are "publicly available . . . government records").

[6] For that reason, *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363, 1374 (3d Cir. 1992), cited by Plaintiffs, is inapposite here.

stated that the ability to induce proliferation or accumulation of regulatory T cells "is not an inherent feature" of butyrate-producing bacterial strains:

> It should also be noted that the ability to induce proliferation or accumulation of transcription factor Foxp3-positive regulatory T cells is ***not an inherent feature*** of butyrate-producing clostridial strains.

Reply to communication from the Examining Division (May 4, 2016) at 13, App. No. 11728077.6[7] (hereinafter, "Ex. B") (emphasis added). Thus, according to the owner of the Asserted Patents, it is not plausible to infer the "induc[tion of] . . . regulatory T cells" based on an observed increase in butyrate levels.

### C. Plaintiffs Allege No Plausible Basis for Their Claim That Vowst® Comprises "Clusters IV and/or XIVa"

The '652, '978, and '343 patents all require compositions that comprise purified live bacterial strain(s) "belonging to *Clostridium* clusters IV or XIVa." Plaintiffs identify no plausible factual basis in the FAC that Vowst® comprises *Clostridium* clusters IV and/or XIVa.

As with the "induces . . . regulatory T cells" limitation, Plaintiffs cite their own summary description of the alleged inventions and Example 18 as the basis for the plausibility of their claim. D.I. 21 at 8-9. As discussed above, these citations have nothing to do with Vowst®, let alone that it comprises the *Clostridium* clusters IV and/or XIVa. Plaintiffs argue that "some of the genera that [Exhibit I to their Complaint] confirms are present in Vowst exclusively contain species that belong to the *Clostridium* clusters XIVa and IV, therefore making it highly plausible that Vowst® contains species that belong to those clusters." D.I. 21 at 9. Plaintiffs make this statement without any supporting citation from the FAC or Exhibit I. There is no such allegation

---

[7] European Patent App. No. 11728077.6 led to issuance of European Patent No. 2 575 835 B1. *See* Ex. A at 1 (referring to "European Patent 2 575 835 B1 / 11 728 077.6").

in Plaintiffs' FAC, and Plaintiffs do not even identify what genera are alleged to "exclusively contain species that belong to *Clostridium* clusters XIVa and IV." *Id.* There is no plausible factual basis to claim that Vowst® comprises the recited *Clostridium* clusters.

Plaintiffs urge an inference that, because the active ingredient in Vowst® is allegedly made from fecal matter "in a manner similar to that described in the patents-in-suit," Vowst® comprises *Clostridium* clusters IV and/or XIVa. D.I. 21 at 9. But Plaintiffs' FAC does not allege that the active ingredient in Vowst® is isolated in such a "similar" manner. Plaintiffs' cited support contains no such allegation, much less render it plausible that it would bear any relationship to the claimed ***method*** of inducing regulatory T cell growth. *See* D.I. 16 ¶¶ 81-84. The entire premise of Plaintiffs' urged inference is therefore without any support.

Finally, Plaintiffs assert that the fecal matter that "induces proliferation and/or accumulation of regulatory T cells, contains 'high amounts' of *Clostridium* clusters XIVa and IV." D.I. 21 at 8-9. But the University of Tokyo stated that such induction is "not an inherent feature" of *Clostridium* clusters IV and XIVa:

> The pending claims require *inter alia* bacteria which induce proliferation or accumulation of transcription factor Foxp3-positive regulatory T cells, as an active ingredient. . . . Moreover, this functional attribute ***is not an inherent feature*** of clostridial strains from clusters IV and XIVa.

Ex. B at 4 (emphasis added). Thus, an allegation that Vowst® "induces . . . regulatory T cells"—even if plausible—does not render plausible that it comprises the claimed *Clostridium* clusters.

## III. CONCLUSION

For the reasons set forth in US Defendants' opening brief (D.I. 19) and herein, Plaintiffs' FAC should be dismissed in its entirety for failure to plausibly claim that Vowst®: (1) induces proliferation and/or accumulation of regulatory T cells; or (2) comprises bacterial strains comprising *Clostridium* clusters IV and/or XIVa.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants*

March 24, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 24, 2025, upon the following in the manner indicated:

Daniel A. O'Brien *VIA ELECTRONIC MAIL*
VENABLE LLP
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Dominick A. Conde *VIA ELECTRONIC MAIL*
Damien N. Dombrowski
Joshua D. Calabro
VENABLE LLP
151 West 42nd Street
New York, NY 10036
*Attorneys for Plaintiffs*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)