IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEDANTA BIOSCIENCES INC. and THE UNIVERSITY OF TOKYO., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) C.A. No. 24-957-RGA ) |
| SERES THERAPEUTICS INC., NESTLÉ S.A., SOCIÉTÉ DES PRODUITS NESTLÉ S.A., NESTLÉ HEALTH SCIENCE S.A., NHSC RX LICENSE GMBH, AIMMUNE THERAPEUTICS, INC., AND NESTLÉ HEALTHCARE NUTRITION, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Presently before the Court are the motions of Defendants Nestlé S.A. ("Nestlé S.A."), Société des Produits Nestlé S.A. ("SPN") and NHSc Rx License GmbH ("NHS Rx") (collectively, "the Moving Defendants") to dismiss for lack of personal jurisdiction. (*See* D.I. 29, 32 & 35). For the reasons set forth below, the Court recommends that NHS Rx's and Nestlé S.A.'s motions be GRANTED, Plaintiff's request for jurisdictional discovery be GRANTED as to SPN, and SPN's motion be DENIED without prejudice to renew after jurisdictional discovery.

**I.      BACKGROUND**

Plaintiff University of Tokyo owns several patents directed to improving human immune responses using bacteria in the *Clostridium* genus, including U.S. Patent Nos. 9,433,652, 9,662,381, 10,555,978 and 11,090,343 (collectively, "the Asserted Patents"). (D.I. 16 ¶ 3). Plaintiff Vedanta Biosciences Inc. ("Vedanta") is a pharmaceutical manufacturer and an exclusive licensee of the Asserted Patents. (*Id.* ¶ 5). Vedanta's license includes the right to sue for infringement. (*Id.*).

Defendant Aimmune Therapeutics, Inc. ("Aimmune") markets and sells Vowst®, a biologic containing fecal microbiota spores indicated to prevent recurrent *Clostridioides difficile* infections. (D.I. 16 ¶¶ 77-78 & 81-86). One genus of spores in Vowst® is allegedly *Clostridium*. (*Id.* ¶ 85). Vowst® is listed in the Purple Book under Biologics License Application ("BLA") No. 125757. (*Id.* ¶ 76). Defendant Seres Therapeutics Inc. ("Seres") is the original creator of Vowst® (internal name SER-109) (*id.* ¶¶ 9 & 81), and Seres sold the entire Vowst® business to SPN in 2024 (*id.* ¶ 33).

On August 20, 2024, Plaintiffs University of Tokyo and Vedanta (together, "Plaintiffs") sued Seres, SPN, Nestlé S.A and two other related entities for patent infringement based on the sale of Vowst® in the United States. (*See* D.I. 1). Given the complexities of Nestlé's corporate structures, the parties attempted to resolve on their own the issue of which parties were the proper defendants in this case. (*See* D.I. 42, Ex. A). Those efforts were unsuccessful and, on December 23, 2024, Plaintiffs filed the First Amended Complaint, adding NHS Rx, Aimmune, and Nestlé Healthcare Nutrition, Inc. as defendants while dropping Nestlé Health Sciences US Holdings, Inc. (*Compare* D.I. 1, *with* D.I. 16).

On March 28, 2025, the Moving Defendants filed the three present motions to dismiss for lack of personal jurisdiction. (*See* D.I. 29, 30 & 31 (Nestlé SA); D.I. 32, 33 & 34 (SPN); D.I. 35, 36, 37 & 38 (NHS Rx)). Plaintiffs responded with an omnibus answering brief and supporting declaration. (D.I. 41 & 42). Briefing was complete on May 16, 2025 (D.I. 43, 44 & 45), and the Court heard oral argument on November 6, 2025 (D.I. 48).

II.   **LEGAL STANDARD**

    A.   **Personal Jurisdiction**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may seek dismissal based on the court's lack of personal jurisdiction over that party. When a party moves to dismiss for lack

2

of personal jurisdiction, the non-moving party bears the burden of showing the basis for jurisdiction. *See, e.g.*, *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation marks and citation omitted). "When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the [non-moving party] and resolve all factual disputes in the [non-moving party's] favor." *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 642 (D. Del. 2006). When deciding personal jurisdiction in patent infringement cases, Federal Circuit law applies rather than Third Circuit law. *Univ. of Mass. v. L'Oréal S.A.*, 36 F. 4th 1374, 1384 (Fed. Cir. 2022).

Determining the existence of personal jurisdiction over non-resident defendants generally requires a two-part analysis – one statutory and one constitutional. *See Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 973 (D. Del. 2013). First, a court must decide whether Delaware's long-arm statute confers jurisdiction over the defendant based on certain of its activities (or activities of its agents). *See generally* DEL. CODE ANN. tit. 10 § 3104(c) (subsections (c)(1)-(c)(3) confer specific jurisdiction, whereas (c)(4) confers general jurisdiction). Once the relevant long-arm statute is satisfied, the court must determine whether exercising jurisdiction over the non-resident defendant comports with the Due Process Clause of the Fourteenth Amendment. *See Round Rock*, 967 F. Supp 2d at 973. Due process requires the existence of "certain minimum contacts" between the defendant and the forum state, "such that the

3

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Personal jurisdiction under the Due Process Clause may be general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). General personal jurisdiction arises when the defendant is at home in the jurisdiction, either because the defendant is incorporated or resides in the forum or because the defendant has "continuous and systematic" contacts with the forum such that the defendant is essentially at home in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 924 (2011). Specific personal jurisdiction exists when (1) the defendant purposefully avails itself of or directed its conduct at the forum, (2) plaintiff's claim either "arise[s] out of" (a causal connection) or "relate[s] to" (a non-causal but otherwise reasonable connection) the defendant's conduct in the forum and (3) the assertion of jurisdiction is reasonable. *Maxchief Invs. Ltd v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The defendant bears the burden of establishing that the Court's exercise of specific jurisdiction is unreasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

### B. Jurisdictional Discovery

Whether to grant jurisdictional discovery is governed by the law of the Third Circuit. *Univ. of Mass.*, 35 F.4th at 1384. If the plaintiff "presents factual allegations that suggest with reasonable particularity" that sufficient contacts between the defendant and the forum may exist, jurisdictional discovery is favored unless the plaintiff's jurisdictional claim is "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Jurisdictional discovery is inappropriate when plaintiff's request is based on "bare allegations" such that granting limited discovery would constitute a "fishing expedition." *Eurofins Pharma US Holdings v. BioAlliance Pharma S.A.*, 623 F.3d 147, 157 (3d Cir. 2010).

4

**III.    DISCUSSION**

Plaintiffs allege that the Court has specific personal jurisdiction over the Moving Defendants – either directly or through their agents – under Delaware's long-arm statute or alternatively under Federal Rule of Civil Procedure 4(k)(2) based on the "stream of commerce" doctrine.[1]  The Court addresses each purported basis for jurisdiction in turn.

**A.    Delaware's Long-Arm Statute**

Plaintiffs' only theory under the Delaware long-arm statute is that the Court has personal jurisdiction over the Moving Defendants under the so-called "dual jurisdiction" theory. (D.I. 41 at 6-10).  Because Delaware's long-arm statute should be construed to confer the broadest jurisdiction possible, some courts have construed Sections 3104(c)(1) and (c)(4) together to create a theory of "dual jurisdiction" – a statutory analogue to the "stream of commerce" theory available under the Due Process Clause. *Boone v. Oy Partek*, 724 A.2d 1150, 1157-58 (Del. Super. Ct. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *Power Integrations, Inc. v. BCD Semiconductor Corp*, 547 F. Supp. 2d 365, 372 (D. Del. 2008) (Stark, J.); *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1352 (Fed. Cir. 2016).  Other courts find that this "dual jurisdiction" theory contradicts the explicit statutory language. *See, e.g.*, *Phila. Indem. Ins. Co. v. Air Vent, Inc.*, C.A. No. N22C-04-200 SKR, 2025 WL 2170930, at *6-7 (Del. Super. Ct. July 30, 2025) (unpublished); *Round Rock Rsch. LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 977 (D. Del. 2013) (Andrews, J.).  The validity of the dual jurisdiction theory remains undecided by the Delaware Supreme Court. *See Polar Electro*, 829 F.3d at 1352.

---

[1]    Plaintiffs do not assert general jurisdiction exists here. (*See* D.I. 41 at 17 (Plaintiffs' answering brief indicating that general jurisdiction "is not at-issue here")).

Given that the district judge presiding over this case has previously decided that a dual jurisdiction theory is not permitted under Section 3104(c), the undersigned concludes that this theory of jurisdiction is unavailable here. *See Round Rock*, 967 F. Supp. 2d at 977.

Plaintiffs also argue that the Moving Defendants are subject to the Court's personal jurisdiction because Aimmune – a Delaware corporation subject to the Court's general jurisdiction – acts as the agent of the Moving Defendants. (D.I. 41 at 10; D.I. 38 ¶ 3; *see also* D.I. 48 at 47:17-48:4). To the extent that Plaintiffs suggest that agency alone may provide a basis for jurisdiction without regard to satisfying any specific prong of the long-arm statute, that is wrong.[2] *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1465 (D. Del. 1991) (Roth, J., sitting by designation) ("[W]e reject the argument that an agency relationship with a Delaware corporation is alone sufficient to confer jurisdiction, so that it is unnecessary to meet the terms of the long-arm statute. Rather, the result of finding such an agency relationship is simply that we may attribute certain of Inc.'s acts to Limited and Holdings in assessing whether the requirements of the Delaware long-arm statute have been satisfied."); *see also* DEL. CODE ANN. tit. 10 § 3104(c) ("[A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person ***or through an agent*** . . . ." (emphasis added)).

Moreover, Plaintiffs fail to adequately plead the existence of any agency relationships. Although not entirely clear, Plaintiffs appear to be relying on Paragraph 25 to support this theory:

> Upon information and belief, this Court has personal jurisdiction over Nestlé, directly and through intermediaries, distributors, importers, customers, and/or subsidiaries. Both by itself and through the direction and control of its subsidiaries, Nestlé has committed acts of direct and indirect patent infringement within Delaware, and elsewhere within the United States, giving rise to this Action and/or has established minimum contacts with Delaware such that personal

---

[2]   Plaintiffs fail to identify which subsection of Section 3104 is satisfied by any of the Moving Defendants acting through Aimmune.

6

> jurisdiction over Nestlé would not offend traditional notions of fair play and substantial justice.

(D.I. 16 ¶ 25; *but see* D.I. 48 at 43:23-44:1 (at oral argument, Plaintiffs cited Paragraphs 13-30 for agency)).[3] But this allegation in no way provides sufficient notice of which defendants control which other defendant(s), effectively precluding the Moving Defendants (and the Court) from understanding the nature of the agency relationship(s) asserted here. In fact, the Court is unable to locate any allegations in the First Amended Complaint that plausibly support an agency relationship exists between any of the relevant defendants – Aimmune or otherwise.[4] This stands in contrast to the various declarations submitted by the Moving Defendants showing the corporate separateness of Aimmune relative to the other entities. (D.I. 31, 34, 37 & 38).

Plaintiffs fail to raise any other bases for jurisdiction under Section 3104. Indeed, at the hearing on the Moving Defendants' motions, Plaintiffs conceded that their only theory of jurisdiction under the Delaware long-arm statute was "dual jurisdiction." (D.I. 48 at 43:11-19). Having rejected that theory, there is no basis for the Court to conclude that statutory jurisdiction

---

[3] Plaintiffs define "Nestlé" to include "Defendants Nestlé [S.A.], SPN, [Nestlé Health Science S.A.], NHS Rx, Aimmune, and [Nestle HealthCare Nutrition]." (D.I. 16 ¶ 17). But this definition is circular and non-sensical in the context of Paragraph 25. The confusion arising from this generic allegation is another reason that any agency theories are not adequately pled.

[4] Plaintiffs also allege that "Defendants, acting in consort, placed the Vowst® products into the stream of commerce" knowing the products would likely end up in Delaware. (D.I. 16 ¶ 34). This allegation is almost a verbatim recitation of the Federal Circuit's holding from *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). But *Beverly Hills* (and *Polar Electric*) addressed businesses "acting in consort" – where "acting in consort" meant that the business entity seeking dismissal under Rule 12(b)(2) had purposefully availed itself of the forum without regard to the agent's conduct – and neither case evaluated agency relationships to establish jurisdiction. *See Polar Electro*, 829 F.3d at 1350 (reviewing the defendant's individual conduct to establish purposeful availment, rather than the defendant's alleged agent's conduct); *Beverly Hills*, 21 F.3d at 1564 (discussing the intentional formation of distribution channels by the defendant with its subsidiary to reach the relevant forum). The Court views Paragraph 34 here as alleging purposeful availment under the stream-of-commerce doctrine – not an agency theory.

over any Moving Defendant exists under the Delaware long-arm statute. As a result, the Court does not reach the issue of constitutional jurisdiction. *See Joint Stock Society Trade House of Descendants of Peter Smirnoff v. Heublein, Inc.*, 936 F. Supp. 177, 194 (D. Del. 1996).

### B.     Rule 4(k)(2)

As a last resort, Plaintiffs allege that the Court may nevertheless assert personal jurisdiction over each of the Moving Defendants under Rule 4(k)(2). (D.I. 41 at 12-13). Rule 4(k)(2) provides an alternative basis for long-arm jurisdiction. FED. R. CIV. P. 4(k)(2). To establish jurisdiction under Rule 4(k)(2), a plaintiff's claim must arise under federal law, the foreign defendant must not be subject to the jurisdiction of any state's courts of general jurisdiction, and exercising jurisdiction must comport with due process under the Fifth Amendment. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411-12 (Fed. Cir. 2009). The defendant must provide an alternative court that would have had jurisdiction over it when the case was filed in order to avoid being subject to suit if Rule 4(k)(2) is otherwise satisfied. *In re Stingray IP Sols., LLC*, 56 F. 4th 1379, 1384-85 (Fed. Cir. 2023). Here, Plaintiffs' patent infringement claims clearly arise under federal law. And none of the Moving Defendants assert that jurisdiction would be proper in another state. (*See* D.I. 30 at 17-18; D.I. 33 at 17-18; D.I. 36 at 17; D.I. 43 at 9; D.I. 44 at 9; D.I. 45 at 9). The only remaining question under Rule 4(k)(2) is whether the exercise of jurisdiction by this Court satisfies due process.

Plaintiffs argue that jurisdiction is proper under Rule 4(k)(2) under the "stream of commerce" doctrine or under an agency theory. (D.I. 41 at 12-13). As to agency under Rule 4(k)(2), because Plaintiffs' theory appears to rely on the same inadequate allegations as the agency theory under Section 3104, the theory under Rule 4(k)(2) fails for the same reasons – it is insufficiently pled as to all Moving Defendants. As to the "stream of commerce" doctrine, however, the Court reaches a slightly different result. The "stream of commerce" doctrine is a

cognizable theory of personal jurisdiction under the Due Process Clause. *See Polar Electro*, 829 F.3d at 1348-50. Under the doctrine, a defendant who places a product into the stream of commerce may be subject to the challenged forum's personal jurisdiction. *Id.* at 1348. Although it is unclear whether mere awareness that the product will end up in the forum is enough, courts have routinely found that a defendant who intends to serve the forum's market is subject to jurisdiction. *Id.* at 1348-50. Because the contacts must be separated for each defendant, *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980), the Court analyzes the contacts of each Moving Defendant separately.[5]

        1.    <u>SPN's Contacts</u>

Plaintiffs allege that SPN entered into an agreement with Seres to acquire the Vowst® business. (D.I. 16 ¶ 33). Plaintiffs further allege that this Court exercising jurisdiction over "Nestle SA, SPN, NHS SA and/or NHS Rx" is consistent with the U.S. Constitution because of "their involvement with commercializing the Vowst® products in the United States." (*Id.* ¶ 35). Based on these allegations and Plaintiffs' arguments (D.I. 41 at 3-5, 13-16), the Court understands Plaintiffs to be alleging that SPN is subject to specific personal jurisdiction because it participated in placing the Vowst® product into the stream of commerce. SPN argues that Plaintiffs are improperly collapsing all entities into "Defendants, acting in consort" and, further, that there are no plausible allegations that SPN "acted in any way involving Vowst®." (D.I. 33 at 15). SPN maintains that it "has never placed Vowst®[] into the stream of commerce." (*Id.* at 16). Instead, SPN licensed Vowst® intellectual property rights to "an affiliate" (D.I. 34 ¶ 14) and, in SPN's view, this is insufficient to confer jurisdiction under a "stream of commerce" theory (D.I. 33 at 16).

---

[5]    Again, this is despite Plaintiffs' attempt to aggregate and attribute all Defendants' activities to unspecific "Nestlé" entities or "Defendants." (*Supra* notes 3 & 4; *see, e.g.*, D.I. 16 ¶¶ 23, 25, 34, 90, 92-94, 96). Where possible, the Court endeavors to undertake the due process analysis using factual allegations that are not aggregated. (*See, e.g.*, D.I. 16 ¶ 33).

9

Ultimately, the Court is currently unable to determine whether SPN has the requisite sufficient minimum contacts to be subject to jurisdiction here under the "stream of commerce" doctrine. Plaintiffs allege that SPN acquired the Vowst® business from Seres in August 2024. (D.I. 16 ¶ 33). SPN's declaration confirms this. (D.I. 34 ¶ 12 ("On August 5, 2024, SPN acquired all rights to Vowst® from Seres Therapeutic through an Asset Purchase Agreement.")); *see also* D.I. 42, Ex. E at 2/258 (Seres SEC filing indicating that SPN and Seres entered into purchase agreement, whereby Seres "agreed to sell Seres' VOWST microbiome therapeutic business . . . including inventory and equipment, certain patents and patent applications, know-how, trade secrets . . . ")). SPN maintains that it does not "directly" engage in any manufacturing, distributing or sales in the United States, but notes that it is the parent company of Aimmune (among others). (D.I. 34 ¶¶ 5 & 7). Aimmune distributes Vowst® in the United States (*id.* ¶ 6), but it is not the manufacturer (*see* D.I. 38 ¶ 6 ("Aimmune is the only entity within the Nestlé group that has ever imported, sold, or offered for sale Vowst® in the United States.")). Plaintiffs respond to these assertions with evidence that "Nestlé Health Science"[6] has been the lead commercialization party for Vowst® in the United States since 2023 (D.I. 42, Ex. C) and, further, that Seres described SPN as the "lead commercialization party for VOWST" in an SEC filing on August 25, 2024 (D.I. 42, Ex. E at 59/258). SPN also acquired all Seres assets (*e.g.*, technological and financial records, equipment, contracts, etc.) associated with the Vowst® product. (D.I. 42, Ex. E at 59/258).

Given that SPN acquired the entire Vowst® business from SPN in 2024 – and that SPN was held out to be the "lead commercialization party" for Vowst® in a United States SEC filing – the Court cannot conclude at this stage that SPN has had no relevant contacts with the stream of

---

[6] "Nestlé Health Science" is not a party and appears to be a "global business unit" that could refer to one or more Nestlé entities. (*See* D.I. 42, Ex. C ("About Nestlé Health Science")).

commerce here. Stated differently, it appears that SPN may have had some involvement in establishing (or maintaining) commercialization efforts for Vowst® in the United States. Nothing that SPN has raised in its briefing or declaration leads the Court to conclude that, notwithstanding this, jurisdictional discovery here would be "clearly frivolous." Ultimately, the Court finds that jurisdictional discovery is appropriate to understand the nature of SPN's commercialization efforts for Vowst® in the United States and whether SPN has (or had) jurisdictionally relevant contact with the stream of commerce for Vowst®. *See Toys "R" Us*, 318 F.3d at 456 ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" (citation omitted)).

2. NHS Rx's Contacts

Unlike with SPN, the Court can conclude that NHS Rx appears to lack sufficient contacts with the United States. None of Plaintiffs' exhibits or declarations mention NHS Rx individually. Plaintiffs' only mention of NHS Rx in the First Amended Complaint references an SEC filing by Seres. (D.I. 16 ¶ 32). That filing states that NHS Rx signed an agreement with Seres to develop and commercialize Seres's "microbiome technology (including VOWST)" in the United States. (*Id.* ¶ 32). But the statement by Seres does not indicate (or plausibly suggest) that NHS Rx had any role in commercializing Vowst® or placing Vowst® in the stream of commerce. In fact, NHS Rx has submitted a declaration to the contrary. (D.I. 37 ¶¶ 5, 11). Indeed, NHS Rx has represented that it sublicensed any rights that it had to Vowst® commercialization to "an affiliate." (*Id.* ¶ 9). And NHS Rx's rights terminated on August 5, 2024 – when SPN acquired Vowst® from Seres. (*Id.* ¶ 10). In the Court's view, NHS Rx never had any relevant contacts with the stream of commerce relating to the Vowst® product. And Plaintiff has offered no additional evidence (or allegations) that NHS Rx has sufficient contacts with the United States such that personal

jurisdiction over NHS Rx is proper here. (*See* D.I. 48 at 31:5-20 (Plaintiffs admitting that theory of personal jurisdiction over NHS Rx "weaker" than for SPN)). NHS Rx should be dismissed.

### 3. Nestlé S.A.'s Contacts

Nestlé S.A.'s contacts are even more attenuated under the "stream of commerce" doctrine than NHS Rx's. Plaintiffs only mention one fact related to Nestlé S.A. across both the First Amended Complaint and the briefing: that Nestlé S.A. owns and operates Nestlé Health Science, a business group, that "has been commercializing Vowst . . . in the United States." (D.I. 16 ¶ 26; *see also* D.I. 41 at 3; D.I. 42 Ex. D, at 3/4). Under a direct (rather than agency) theory of stream of commerce, this allegation is insufficient because it does not relate to the manufacture or distribution of Vowst® by Nestlé S.A. Instead, the allegation only relates to potential purposeful availment by "Nestlé Health Science." And Nestlé S.A. has stated that it does not manufacture, market, sell or distribute Vowst® in the United States, nor does it hold any rights to perform or control any such manufacture, marketing, sales or distribution. (D.I. 31 ¶¶ 5, 12, 13 & 14). Plaintiffs fail to provide sufficient evidence to support jurisdiction over Nestlé S.A. based on Nestlé S.A.'s actions in a purported distribution channel under the "stream of commerce" doctrine. (*See* D.I. 48 at 25:19-26:7 & 31:5-20 (Plaintiffs recognizing weakness in their theory of jurisdiction as to Nestle S.A.)). The Court has no basis to conclude that Nestlé S.A. has the requisite contacts to be subject to personal jurisdiction here. Dismissal is therefore appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Nestlé S.A.'s and NHS Rx's motions to dismiss for lack of personal jurisdiction (D.I. 29 & 35) be GRANTED, Plaintiffs' request for jurisdictional discovery regarding SPN be GRANTED, and SPN's motion to dismiss for lack of personal jurisdiction (D.I. 32) be DENIED without prejudice to renew.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall limited to ten (10) pages and filed within fourteen days (14) after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: December 2, 2025

_____
UNITED STATES MAGISTRATE JUDGE