IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VEDANTA BIOSCIENCES INC. and
THE UNIVERSITY OF TOKYO,

        Plaintiffs,

        v.

SERES THERAPEUTICS INC., SOCIÉTÉ
DES PRODUITS NESTLÉ S.A., AIMMUNE
THERAPEUTICS, INC., and NESTLE
HEALTHCARE NUTRITION, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 24-957 (RGA)

**JURY TRIAL DEMANDED**

## U.S. DEFENDANTS' ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendants Seres Therapeutics, Inc. ("Seres"), Aimmune Therapeutics, Inc. ("Aimmune"), and Nestlé HealthCare Nutrition, Inc. ("NHN") (collectively, "U.S. Defendants")[1], by their undersigned attorneys, answer the Second Amended Complaint ("SAC") of Plaintiffs Vedanta Biosciences Inc. and the University of Tokyo (together, "Plaintiffs") as follows:

## GENERAL DENIAL

Pursuant to Federal Rule of Civil Procedure 8(b)(3), U.S. Defendants deny all allegations in Plaintiffs' SAC except those expressly admitted below.

## NATURE OF THE ACTION

1.      This is an action for infringement of United States Patent Nos. 9,433,652 (the "'652 patent"), 9,662,381 (the "'381 patent"), 9,808,519 (the "'519 patent"), 10,555,978 (the "'978 patent"), 11,090,343 (the "'343 patent"), 12,214,003 (the "'003 patent"), and 12,409,196 (the "'196 patent") (collectively, the "Asserted Patents") under the Patent Laws of the United States,

---

[1]  Pursuant to the Court's Scheduling Order, Defendant Societé des Produits Nestlé S.A. is "engaged in ongoing jurisdictional discovery with the intent to renew its motion to dismiss for lack of personal jurisdiction" and "is not subject to the . . . deadlines of [the Court's] Scheduling Order [including the deadline to respond Plaintiffs' Second Amended Complaint] until such time the Court rules on its forthcoming motion." (D.I. 60).

35 U.S.C. § 100 et seq., including §§ 271(a) and (b), arising from Defendants' unauthorized development, manufacturing, importation, commercial marketing, promotion, distribution, offers for sale, sales, and/or use of fecal microbiota spores, live-brpk ("API") and/or Vowst® (fecal microbiota spores, live-brpk capsules), and/or Defendants' active inducement of others to commit such infringing acts, as detailed herein. True and correct copies of the Asserted Patents are attached as Exhibits A-G.

**ANSWER:** U.S. Defendants admit that Plaintiffs' SAC purports to state a claim for patent infringement of United States Patent Nos. 9,433,652 (the "'652 patent"), 9,662,381 (the "'381 patent"), 9,808,519 (the "'519 patent"), 10,555,978 (the "'978 patent"), 11,090,343 (the "'343 patent"), 12,214,003 (the "'003 patent"), and 12,409,196 (the "'196 patent") (collectively, the "Asserted Patents") arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.  U.S. Defendants further admit that Plaintiffs attached copies of the Asserted Patents as Exhibits A-G to their SAC.  Except as so admitted, U.S. Defendants deny any remaining allegations of paragraph 1.

## THE PARTIES

2.      Plaintiff the University of Tokyo is a Japanese university having an address at UCR Plaza, 7-3-1 Hongo, Bunkyo-Ku, Tokyo, Japan 113-0033.

**ANSWER:** On information and belief, U.S. Defendants admit the allegations of paragraph 2.

3.      The University of Tokyo is the owner and assignee of the Asserted Patents and exclusively licensed the Asserted Patents to Vedanta.

**ANSWER:** U.S. Defendants admit that "The University of Tokyo" is listed as the "Applicant" and "Assignee" on the face of the Asserted Patents, and, except as so admitted, lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 and, therefore, deny those allegations.

4.      Plaintiff Vedanta Biosciences Inc. ("Vedanta") is a Delaware corporation, having its principal place of business at 19 Blackstone St., Cambridge, MA 02139.

**ANSWER:** On information and belief, U.S. Defendants admit the allegations of paragraph 4.

5.      Vedanta has an exclusive license to the Asserted Patents, including the right to sue for infringement.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 and on that basis deny them.

6.      Vedanta is in the business of, *inter alia*, developing pharmaceutical products.

**ANSWER:** U.S. Defendants admit that Vedanta Biosciences Inc. holds itself out as a clinical-stage biopharmaceutical company attempting to develop medicines for the treatment of gastrointestinal diseases.  U.S. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 and on that basis deny them.

7.      Upon information and belief, Defendant Seres Therapeutics Inc. ("Seres") is a Delaware corporation, having its principal place of business at 101 Cambridgepark Dr., Cambridge, MA 02140.

**ANSWER:** U.S. Defendants admit that Seres is a company organized and existing under the laws of the State of Delaware, having a place of business at 101 Cambridge Park Dr., Cambridge, Massachusetts 02140.

8.      Upon information and belief, Seres is a pharmaceutical company in the business of, among other activities, developing, manufacturing, and/or commercializing microbiome therapeutics.

**ANSWER:** U.S. Defendants admit that Seres is a biopharmaceutical company, and that it led the development of the microbiome product that is currently sold under the trade name Vowst®. U.S. Defendants otherwise deny the allegations of paragraph 8.

9.      Upon information and belief, Seres has developed the drug product fecal microbiota spores, live-brpk, capsules for oral administration, and commercially manufactures, distributes, markets, offers for sale and/or sells it under the name Vowst® in the United States.

3

**ANSWER:** U.S. Defendants admit that Seres led the development of the microbiome product that is currently sold under the trade name Vowst®, admit that Vowst® (fecal microbiota spores, live-brpk) is indicated for oral administration, and, except as so admitted, deny the allegations of paragraph 9.

10.     Upon information and belief, Defendant Société des Produits Nestlé S.A. ("SPN") is a Swiss company having a principal place of business at 55 Avenue Nestlé, 1800 Vevey, Switzerland.

**ANSWER:** U.S. Defendants admit the allegation of paragraph 10.

11.     Upon information and belief, Defendant Aimmune Therapeutics, Inc. ("Aimmune") is a company organized and existing under the laws of the State of Delaware. Aimmune may be served via its registered agent, the Corporation Trust Company, which has an address at Corporate Trust Center 1209 Orange St., Wilmington DE 19801.

**ANSWER:** U.S. Defendants admit that Aimmune is a corporation organized and existing under the laws of Delaware, and that the Corporation Trust Company is listed as Aimmune's registered agent in Delaware at 1209 Orange St., Wilmington DE 19801.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 11.

12.     Upon information and belief, Defendant Nestle HealthCare Nutrition, Inc. ("NHC Nutrition") is a company organized and existing under the laws of the State of Delaware. NHC Nutrition may be served via its registered agent, the Corporation Trust Company, which has an address at Corporate Trust Center 1209 Orange St., Wilmington DE 19801.

**ANSWER:**  U.S. Defendants admit that NHN is a corporation organized and existing under the laws of Delaware, and that the Corporation Trust Company is listed as NHN's registered agent in Delaware at 1209 Orange St., Wilmington DE 19801.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 12.

13.     Upon information and belief, Defendants SPN, Aimmune, and NHC Nutrition (collectively, "Nestlé") are in the business of, among other activities, commercializing microbiome therapeutics.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively.  To the extent Plaintiffs are using the term "Nestlé" to refer to Aimmune, U.S.

4

Defendants admit that Aimmune currently distributes Vowst® and that Vowst® is a microbiome therapeutic. Except as so admitted, U.S. Defendants deny the allegations of paragraph 13.

14.    Upon information and belief, Seres licensed and sold Vowst® to Nestlé for the commercial marketing, distribution, and sales of Vowst® to residents throughout the United States, including in this district.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. To the extent Plaintiffs are using the term "Nestlé" to refer to SPN, U.S. Defendants admit that the acquisition of rights to Vowst is addressed in the August 5, 2024 Asset Purchase Agreement between SPN and Seres, and, except as so admitted, U.S. Defendants deny the allegations of paragraph 14.

15.    Upon information and belief, Nestlé distributes, markets, offers for sale, and/or sells Vowst® in the United States, including in this district.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. To the extent Plaintiffs are using the term "Nestlé" to refer to Aimmune, U.S. Defendants admit that Aimmune currently distributes Vowst®. Except as so admitted, U.S. Defendants deny the allegations of paragraph 15.

## JURISDICTION AND VENUE

16.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., including §§ 271(a) and 271(b).

**ANSWER:** Paragraph 16 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit that Plaintiffs' SAC purports to state a claim for patent infringement of the Asserted Patents arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271. Except as so admitted, U.S. Defendants deny the allegations of paragraph 16.

17.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338(a).

5

**ANSWER:** Paragraph 17 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants admit that the Court has subject matter jurisdiction over Plaintiffs' claims of patent infringement for purposes of this specific action only, deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 17.

18.     This Court has personal jurisdiction over Seres.

**ANSWER:** Paragraph 18 states legal conclusions for which no answer is required.  To the extent that an answer is required, Seres does not contest personal jurisdiction over Seres for purposes of this action only.  U.S. Defendants specifically deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 18.

19.     Upon information and belief, Seres is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Delaware Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Delaware residents vicariously through and/or in concert with its intermediaries, distributors, importers, customers and/or subsidiaries. Upon further information and belief, Seres, acting in consort with Nestlé, commercially markets, distributes, offers for sale, and sells Vowst® to residents throughout the United States, including in Delaware. Upon further information and belief, Seres has established, and will continue to maintain, minimum contacts with this forum such that the exercise of jurisdiction over Seres would not offend traditional notions of fair play and substantial justice.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively.  Paragraph 19 states legal conclusions for which no answer is required.  To the extent that an answer is required, Seres does not contest personal jurisdiction over Seres for purposes of this action only.  U.S. Defendants specifically deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 19.

20.     This Court has personal jurisdiction over Nestlé.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. Paragraph 20 states legal conclusions for which no answer is required. To the extent that an answer is required and to the extent Plaintiffs are using the term "Nestlé" to refer to NHN and Aimmune, NHN and Aimmune do not contest personal jurisdiction over NHN and Aimmune for purposes of this action only. U.S. Defendants specifically deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 20.

21.     Upon information and belief, this Court has personal jurisdiction over Nestlé, directly and through intermediaries, distributors, importers, customers, and/or subsidiaries. Both by itself and through the direction and control of its subsidiaries, Nestlé has committed acts of direct and indirect patent infringement within Delaware, and elsewhere within the United States, giving rise to this Action and/or has established minimum contacts with Delaware such that personal jurisdiction over Nestlé would not offend traditional notions of fair play and substantial justice.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. Paragraph 21 states legal conclusions for which no answer is required. To the extent that an answer is required and to the extent Plaintiffs are using the term "Nestlé" to refer to NHN and Aimmune, NHN and Aimmune do not contest personal jurisdiction over NHN and Aimmune for purposes of this action only. U.S. Defendants specifically deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 21.

22.     In particular, upon information and belief, "Nestlé Health Science has been commercializing the VOWST (fecal microbiota spores, live-brpk) capsules since its launch in June 2023 in the United States." https://www.nestlehealthscience.com/newsroom/press-releases/nhs-agreement-vowst-global-rights.

**ANSWER:** U.S. Defendants deny the allegations of paragraph 22.

23.     Upon information and belief, NHC Nutrition is identified on the Vowst® website as the corporate contact for the Vowst® product and the headquarters for "Nestle Health Science U.S." https://www.vowst.com/sites/default/files/2023-04/CONTACT-US-VOWST-FINAL.pdf.

**ANSWER:** U.S. Defendants refer to the cited website for the contents thereof (as last accessed on May 11, 2026), and, except as so admitted, deny the allegations of paragraph 23.

24.    Upon information and belief, NHC Nutrition disclosed payments to at least three U.S. physicians in connection with the Vowst® product. https://openpaymentsdata.cms.gov/payment/2023/General/1012446689; https://openpaymentsdata.cms.gov/payment/2023/General/1012512727; https://openpaymentsdata.cms.gov/payment/2023/General/1012493573.

**ANSWER:** U.S. Defendants refer to the cited website for the contents thereof (as last accessed on May 11, 2026), and, except as so admitted, deny the allegations of paragraph 24.

25.    Upon information and belief, Aimmune is listed on the FDA-approved Vowst® package insert as the distributor of the Vowst® product and the contact for adverse event reporting. *See* https://www.fda.gov/media/167579/download?attachment, at 1, 7.

**ANSWER:** U.S. Defendants refer to the cited website for the contents thereof (as last accessed on May 11, 2026), admit that Aimmune currently distributes Vowst in the United States, and, except as so admitted, deny the allegations of paragraph 25.

26.    Upon information and belief, SPN signed an agreement with Seres in August 2024 to "acquire the VOWST business" from Seres. https://www.nestlehealthscience.com/newsroom/press-releases/nhs-agreement-vowst-global-rights; https://ir.serestherapeutics.com/news-releases/news-release-details/seres-therapeutics-announces-signing-vowsttm-asset-purchase.

**ANSWER:** U.S. Defendants refer to the cited website for the contents thereof (as last accessed on May 11, 2026), and, except as so admitted, deny the allegations of paragraph 26.

27.    Accordingly, upon information and belief, Defendants, acting in consort, placed the Vowst® products into the stream of commerce, knowing the likely destination of the products throughout the United States, including specifically in Delaware, and their conduct and connections with Delaware were such that they should reasonably have anticipated being brought into Court here.

**ANSWER:** Paragraph 27 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 27.

28.    Alternatively, to the extent SPN is deemed not to be subject to jurisdiction in any state's courts of general jurisdiction, then this Court has personal jurisdiction over SPN pursuant to Fed. R. Civ. P. 4(k)(2). Given its involvement with commercializing the Vowst® products in

the United States, exercising jurisdiction over SPN is consistent with the United States Constitution and laws.

**ANSWER:** Paragraph 28 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 and on that basis deny them.

29.    Upon further information and belief, Venue is proper in this judicial district as to Defendant Seres under 28 U.S.C. § § 1391 and 1400(b) at least because Seres is a Delaware company and thus resides in this judicial district for purposes of venue under § 1400(b).

**ANSWER:** Paragraph 29 states legal conclusions for which no answer is required. To the extent that an answer is required, Seres admits that it is a company organized and existing under the laws of the State of Delaware. U.S. Defendants specifically deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 29.

30.    Upon further information and belief, Venue is proper in this judicial district as to Nestlé under 28 U.S.C. § § 1391 and 1400(b). SPN is a foreign company not residing in any United States district and may be sued in any judicial district that has personal jurisdiction, including this district. Aimmune and NHC Nutrition are Delaware companies and thus reside in this judicial district for the purpose of venue under § 1400(b).

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. Paragraph 30 states legal conclusions for which no answer is required. To the extent that an answer is required and to the extent Plaintiffs are using the term "Nestlé" to refer to NHN and Aimmune, NHN and Aimmune admit that they are Delaware companies. U.S. Defendants specifically deny that Plaintiffs are entitled to any of the relief that they seek, and, except as so admitted, deny the allegations of paragraph 30.

## FACTUAL BACKGROUND

### Background of the Invention

31.    Inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue and Plaintiff, the University of Tokyo, invested substantial resources in researching, identifying, and developing new compounds for the treatment of disease. One such composition includes live bacteria from a spore-forming fraction of a human fecal sample. The novel composition can be

used for treating an individual whose resistance to the infectious diseases is impaired. (Ex. B, col. 2, ll. 22-24.) The live bacteria from a spore-forming fraction of a human fecal sample were used because the inventors discovered that specific bacteria induce proliferation or accumulation of regulatory T cells.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 and, therefore, deny those allegations.

32.    Inducement of proliferation or accumulation of regulatory T cells is significant because regulatory T cells are responsible for maintaining homeostasis of the immune system. (Ex. B, col. 15, ll. 1-5.) The inventors were motivated to discover a mechanism to induce the proliferation or accumulation of regulatory T cells. The presence of certain species of intestinal microbiota exerts a major influence on the differentiation of regulatory T cells. (Ex. B, col. 2, ll. 20-24.)

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 and, therefore, deny those allegations.

33.    Through the inventors' efforts and research, they discovered that bacteria belonging to the genus Clostridium induce proliferation or accumulation of regulatory T cells in the colon. (Ex. B, col. 3, ll. 42-45.) The inventors isolated and purified the live bacteria from a spore-forming fraction of a human fecal sample. (Ex. B, col. 12, ll. 55-60.) The isolated and purified bacteria became the active ingredient of the inventors' novel composition.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 and, therefore, deny those allegations.

34.    The inventors' discovery enabled them to create compositions comprised of the identified intestinal commensal bacteria to induce the proliferation or accumulation of regulatory T cells in the human utilizing the composition. (*See* Ex. B, col. 3, ll. 24-33).

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 and, therefore, deny those allegations.

### Novelty and Advantages of the Invention

35.    At the time of the invention, it was known that the presence of intestinal bacteria enhances mucosal immune systems, providing immune responses against pathogenic microbes invading a host. It was theorized that the presence of certain intestinal microbiota may exert an influence on the differentiation of regulatory T cells. However, it was unknown which, if any, species of commensal bacterial flora exert this influence on the induction of regulatory T cells. (Ex. B, col. 2, ll. 44-49.)

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 and, therefore, deny those allegations.

36.    The inventors of the Asserted Patents found that certain spore-forming bacteria found in fecal matter, such as those in the genus Clostridium, induce this previously theorized accumulation of regulatory T cells in the colon. The T cells induced from bacterial mixtures identified in the Asserted Patents were also found to suppress proliferation of effector T cells to provide an immunosuppressive effect. (Ex. B, col. 3, ll. 37-51.) These spore forming bacteria may be isolated from fecal matter through chemical treatments that result in a combination of spore forming bacteria that, when administered to a human patient, provide an improvement to the patient's immune function via the induction of T cells. (Ex. B, col. 3, ll. 52-57.)

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 and, therefore, deny those allegations.

37.    The novel compositions and methods claimed in the Asserted Patents provide an enhancement to the immune function of a living organism through the administration of these bacteria in a pharmaceutical product. (Ex. B, col. 6, ll. 59-62.) These products may increase the accumulation of T cells and therefore can be used to treat certain diseases, disorders, or conditions that may benefit from immune system enhancement. For example, the compositions of the Asserted patents can be used to treat humans having infectious pathogens that impair maintenance or homeostasis of a host. (Ex. B col. 15, ll. 1-5.) The inventors discovered that humans infected with pathogens such as *Clostridium difficile*, which may induce immunopathological tissue damage resulting in impaired homeostasis, may be treated by administration of the claimed compositions, and claimed methods associated therewith.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 and, therefore, deny those allegations.

### The Asserted Patents

38.    The University of Tokyo is the owner and assignee of the Asserted Patents.

**ANSWER:** U.S. Defendants admit that "The University of Tokyo" is listed as the "Applicant" and "Assignee" on the face of the Asserted Patents, and, except as so admitted, lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 and, therefore, deny those allegations.

39.    The University of Tokyo licensed its patent rights in International Patent Application Nos. PCT/JP2010/71746 and PCT/JP2011/063302 to Vedanta on November 14th, 2011, including any foreign counterparts, divisionals, continuations, continuation-in-part

applications, continued prosecution applications, or any other application claiming priority to PCT/JP2010/71746 and PCT/JP2011/063302.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 and, therefore, deny those allegations.

40.    PCT/JP2011/063302 entered the U.S. national stage on June 3, 2011 as U.S. Patent Application No. 13/701,467.

**ANSWER:** U.S. Defendants refer to the cited documents for the contents thereof, and, except as so admitted, lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 and, therefore, deny those allegations.

41.    Each of the Asserted Patents is issued from a continuation of U.S. Patent Application No. 13/701,467.

**ANSWER:** U.S. Defendants refer to the cited documents for the contents thereof, and, except as so admitted, lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 and, therefore, deny those allegations.

42.    Vedanta is the exclusive licensee of the Asserted Patents. Vedanta possesses the right to sue for infringement of the Asserted Patents.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 and, therefore, deny those allegations.

## A.    U.S. Patent 9,433,652

43.    The '652 Patent is titled "Composition for inducing proliferation or accumulation of regulatory T cells." The '652 Patent was duly and legally issued on September 6, 2016, from U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '652 Patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

**ANSWER:** U.S. Defendants refer to the '652 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 43.

44.    The '652 Patent describes, *inter alia*, a method for treating a disease comprising administering a pharmaceutical composition comprising a purified bacterial mixture of at least two live bacterial strains belonging to Clostridium clusters IV and/or XIVa, to a human subject, where

the bacterial strains are spore-forming bacteria and are isolated from a human. (*See e.g.*, Ex. A, claim 1).

**ANSWER:** U.S. Defendants refer to the '652 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 44.

45.    The claims of the '652 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 45 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 45.

46.    The '652 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 46 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 and, therefore, deny those allegations.

47.    Vedanta, the exclusive licensee of the '652 Patent, possesses the right to sue for infringement of the '652 Patent.

**ANSWER:** Paragraph 47 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 and, therefore, deny those allegations.

**B.    U.S. Patent 9,662,381**

48.    The '381 Patent is titled "Composition for inducing proliferation or accumulation of regulatory T cells." The '381 Patent was duly and legally issued on May 30, 2017, from U.S. Patent Application No. 15/374,693, a continuation of U.S. Patent Application No. 15/216,015, a continuation of U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '381 Patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

**ANSWER:** U.S. Defendants refer to the '381 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 48.

49.    The '381 Patent describes, *inter alia*, a method of treatment with oral administration of a pharmaceutical composition comprising a spore-forming fraction of human fecal matter, where the composition induces proliferation and/or accumulation of regulatory T cells. (*See e.g.*, Ex. B, claim 1.)

**ANSWER:** U.S. Defendants refer to the '381 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 49.

50.    The claims of the '381 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 50 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 50.

51.    The '381 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 51 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 and, therefore, deny those allegations.

52.    Vedanta, the exclusive licensee of the '381 Patent, possesses the right to sue for infringement of the '381 Patent.

**ANSWER:** Paragraph 52 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 and, therefore, deny those allegations.

**C.    U.S. Patent 9,808,519**

53.    The '519 Patent is titled "Composition for inducing proliferation or accumulation of regulatory T cells." The '519 Patent was duly and legally issued on November 7, 2017, from U.S. Patent Application No. 15/590,257, a continuation of U.S. Patent Application No. 15/216,015, a continuation of U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '519 Patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

**ANSWER:** U.S. Defendants refer to the '519 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 53.

54.    The '519 Patent describes, *inter alia*, an orally administered pharmaceutical composition comprising a spore-forming fraction of human fecal matter formulated for delivery to the intestine that induces the proliferation and/or accumulation of regulatory T cells. (*See e.g.*, Ex. C, claim 17.)

14

**ANSWER:** U.S. Defendants refer to the '519 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 54.

55.     The claims of the '519 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 55 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 55.

56.     The '519 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 56 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 and, therefore, deny those allegations.

57.     Vedanta, the exclusive licensee of the '519 Patent, possesses the right to sue for infringement of the '519 Patent.

**ANSWER:** U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57 and, therefore, deny those allegations.

**D.     U.S. Patent 10,555,978**

58.     The '978 Patent is titled, "Composition for inducing proliferation or accumulation of regulatory T cells." The '978 Patent was duly and legally issued on February 11, 2020 from U.S. Patent Application No. 16/425,030, a continuation of U.S. Patent No. 16/389,380, a continuation of U.S. Patent No. 16/171,558, a continuation of U.S. Patent No. 16/117,054, a continuation of U.S. Patent No. 15/730,203, a continuation of U.S. Patent No. 5/216,015, a continuation of U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '978 Patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

**ANSWER:** U.S. Defendants refer to the '978 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 58.

59.     The '978 Patent describes, *inter alia*, a pharmaceutical composition formulated for delivery to the intestine and method of use thereof, comprising one or more purified live bacterial strains belonging to Clostridium clusters IV or XIVa, where the one or more bacterial strains are isolated from a human and induce proliferation and/or accumulation of regulatory T-cells. (*See e.g.*, Ex. D, claims 1 and 16.)

15

**ANSWER:** U.S. Defendants refer to the '978 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 59.

60.    The claims of the '978 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 60 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 60.

61.    The '978 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 61 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 and, therefore, deny those allegations.

62.    Vedanta, the exclusive licensee of the '978 Patent, possesses the right to sue for infringement of the '978 Patent.

**ANSWER:** Paragraph 62 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 and, therefore, deny those allegations.

**E.    U.S. Patent 11,090,343**

63.    The '343 patent is titled, "Composition for inducing proliferation or accumulation of regulatory T cells." The '343 patent was duly and legally issued on August 17, 2021, from U.S. Patent Application No. 16/780,116, a continuation of U.S. Patent Application No. 16/425,030, a continuation of U.S. Patent Application No. 16/389,380, a continuation of U.S. Patent Application No. 16/171,558, a continuation of U.S. Patent Application No. 16/117,054, a continuation of U.S. Patent Application No. 15/730,203, a continuation of U.S. Patent Application No. 15/216,015, a continuation of U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '343 patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

**ANSWER:** U.S. Defendants refer to the '343 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 63.

64.    The '343 Patent describes, *inter alia*, a pharmaceutical composition formulated for delivery to the intestine and method of use thereof, comprising one or more purified live bacterial strains belonging to Clostridium clusters IV or XIVa, where the one or more bacterial strains are

16

human commensal bacteria and induce proliferation and/or accumulation of regulatory T-cells. (*See e.g.*, Ex. E, claims 1 and 16.)

**ANSWER:** U.S. Defendants refer to the '343 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 64.

65.    The claims of the '343 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 65 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 65.

66.    The '343 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 66 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66 and, therefore, deny those allegations.

67.    Vedanta, the exclusive licensee of the '343 Patent, possesses the right to sue for infringement of the '343 Patent.

**ANSWER:** Paragraph 67 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 and, therefore, deny those allegations.

**F.    U.S. Patent 12,214,003**

68.    The '003 patent is titled, "Composition for inducing proliferation or accumulation of regulatory T cells." The '003 patent was duly and legally issued on February 4, 2025, from U.S. Patent Application No. 18/676,470, a continuation of U.S. Patent Application No. 17/371,692, a continuation of U.S. Patent Application No. 16/780,116, a continuation of U.S. Patent Application No. 16/425,030, a continuation of U.S. Patent Application No. 16/389,380, a continuation of U.S. Patent Application No. 16/171,558, a continuation of U.S. Patent Application No. 16/117,054, a continuation of U.S. Patent Application No. 15/730,203, a continuation of U.S. Patent Application No. 15/216,015, a continuation of U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '003 patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

**ANSWER:** U.S. Defendants refer to the '003 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 68.

17

69.    The '003 patent describes, inter alia, a pharmaceutical composition formulated for oral administration, comprising a spore-forming fraction of human fecal matter, where the sporeforming fraction of human fecal matter induces proliferation and/or accumulation of regulatory Tcells. (See e.g., Ex. F, claim 1.)

**ANSWER:** U.S. Defendants refer to the '003 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 69.

70.    The claims of the '003 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 70 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 70.

71.    The '003 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 71 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 and, therefore, deny those allegations.

72.    Vedanta, the exclusive licensee of the '003 Patent, possesses the right to sue for infringement of the '003 Patent.

**ANSWER:** Paragraph 72 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 and, therefore, deny those allegations.

**G.    U.S. Patent 12,409,196**

73.    The '196 patent is titled, "Composition for inducing proliferation or accumulation of regulatory T cells." The '196 patent was duly and legally issued on September 9, 2025, from U.S. Patent Application No. 17/371,692, a continuation of U.S. Patent Application No. 16/780,116, a continuation of U.S. Patent Application No. 16/425,030, a continuation of U.S. Patent Application No. 16/389,380, a continuation of U.S. Patent Application No. 16/171,558, a continuation of U.S. Patent Application No. 16/117,054, a continuation of U.S. Patent Application No. 15/730,203, a continuation of U.S. Patent Application No. 15/216,015, a continuation of U.S. Patent Application No. 14/492,850, a continuation of U.S. Patent Application No. 13/701,467, the National Stage Entry of PCT/JP2011/063302. The '196 patent lists inventors Kenya Honda, Koji Atarashi, Kikuji Itoh, and Takeshi Tanoue.

18

**ANSWER:** U.S. Defendants refer to the '196 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 73.

74.     The '196 patent describes, inter alia, a pharmaceutical composition and method of use thereof, comprising six or more live bacterial strains belonging to Clostridium clusters IV and/or XIVa, where the six or more bacterial strains induce proliferation and/or accumulation of regulatory T-cells. (See e.g., Ex. G, claim 1.)

**ANSWER:** U.S. Defendants refer to the '196 patent for the contents thereof and, except as so admitted, deny the allegations of paragraph 74.

75.     The claims of the '196 Patent are presumed valid and enforceable.

**ANSWER:** Paragraph 75 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 75.

76.     The '196 Patent will expire no earlier than June 3, 2031.

**ANSWER:** Paragraph 76 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 and, therefore, deny those allegations.

77.     Vedanta, the exclusive licensee of the '196 Patent, possesses the right to sue for infringement of the '196 Patent.

**ANSWER:** Paragraph 77 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 and, therefore, deny those allegations.

### The Vowst® Product

78.     Upon information and belief, Defendants own U.S. License No. 2262 under section 351(a) of the Public Health Services Act controlling manufacture and sale of biological products, specifically to manufacture the product fecal microbiota spores, live-brpk. Upon further information and belief, U.S. License No. 2262 was granted after FDA approval of Biologics License Application ("BLA") No. 125757.

**ANSWER:** U.S. Defendants admit that on April 26, 2023, FDA issued U.S. License No. 2262 to Seres Therapeutics, Inc. under the provisions of section 351(a) of the PHS Act

19

controlling the manufacture and sale of biological products. Except as so admitted, U.S. Defendants deny the allegations of paragraph 78.

79. Upon information and belief, Defendants own BLA No. 125757 for Vowst® which the FDA approved on April 26, 2023. Upon information and belief, the FDA's Purple Book lists Aimmune Therapeutics, Inc. as the owner of BLA No. 125757.

**ANSWER:** U.S. Defendants admit that FDA's Purple Book identifies April 26, 2023 as the Date of First Licensure for Vowst®. Except as so admitted, U.S. Defendants deny the allegations of paragraph 79.

80. Upon information and belief, Vowst® is a pharmaceutical composition approved for human patients.

**ANSWER:** U.S. Defendants refer to the FDA-approved prescribing information for Vowst® for the contents thereof and admit that FDA has approved Vowst® (fecal microbiota spores, live-brpk) capsules, for oral administration. U.S. Defendants further admit that Vowst®'s FDA-approved indication is to prevent the recurrence of *Clostridioides difficile* infection (CDI) in individuals 18 years of age and older following antibacterial treatment for recurrent CDI (rCDI). Except as so admitted, U.S. Defendants deny the allegations of paragraph 80.

81. Upon information and belief, Vowst® is indicated for prevention of the recurrence of Clostridioides difficile infection. Upon further information and belief, Vowst® is indicated to treat a human suffering from an infectious disease.

**ANSWER:** U.S. Defendants refer to the FDA-approved prescribing information for Vowst® for the contents thereof and admit that Vowst® is indicated to prevent the recurrence of *Clostridioides difficile* infection (CDI) in individuals 18 years of age and older following antibacterial treatment for recurrent CDI (rCDI). Except as so admitted, U.S. Defendants deny the allegations of paragraph 81.

82. Upon information and belief, Vowst® is administered orally. *See* Vowst® Prescribing Information, Dosage and Administration:

20

----------------------DOSAGE AND ADMINISTRATION----------------------
For oral administration only. (2)
- Prior to taking the first dose:
    - Complete antibacterial treatment for rCDI 2 to 4 days before initiating treatment with VOWST. (2.1)
    - Drink 296 mL (10 oz) of magnesium citrate on the day before and at least 8 hours prior to taking the first dose of VOWST. In clinical studies, participants with impaired kidney function received polyethylene glycol electrolyte solution (250 mL GoLYTELY, not approved for this use). (2.1)
- The dosage of VOWST is 4 capsules taken orally once daily for 3 consecutive days. (2.2)
- Take each dose (4 capsules) on an empty stomach prior to the first meal of the day. (2.2)

**ANSWER:** U.S. Defendants refer to the FDA-approved prescribing information, including the cited passage, for Vowst® for the contents thereof and admit that FDA has approved Vowst® (fecal microbiota spores, live-brpk) capsules, for oral administration.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 82.

83.    Upon information and belief, Vowst® works to add bacteria into the intestine. The following image from the Vowst® website explains that Vowst® targets the intestine.



https://www.vowst.com/how-vowst-works.

**ANSWER:** U.S. Defendants refer to the cited website for the contents thereof (as last accessed on May 11, 2026), and, except as so admitted, deny the allegations of paragraph 83.

84.    Upon information and belief, the code "SER-109" is an internal Seres code for the active ingredient, fecal microbiota spores, live-brpk.

**ANSWER:** Seres admits that Vowst® was previously referred to as "SER-109."  Aimmune and NHN lack knowledge or information sufficient to form a belief as to the truth of the allegations

21

of paragraph 84 and on that basis deny them.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 84.

85.   Upon information and belief, Vowst® contains live bacterial strains. Upon further information and belief, the live bacterial strains are isolated from humans, and more specifically, from human fecal matter. *See* Vowst® Prescribing Information §11:

## 11 DESCRIPTION

VOWST (fecal microbiota spores, live-brpk) is a bacterial spore suspension in capsules for oral administration. VOWST is manufactured from human fecal matter sourced from qualified donors. Human fecal matter donations are routinely tested for a panel of transmissible pathogens. Donors do not have dietary restrictions with respect to potential food allergens. The spore suspension is generated by treating fecal matter with ethanol to kill organisms that are not spores, followed by filtration steps to remove solids and residual ethanol. Each capsule of VOWST contains between $1\times10^6$ and $3\times10^7$ Firmicutes spore colony forming units  in 92 ± 4% (w/w) glycerol in saline.

**ANSWER:** U.S. Defendants refer to the FDA-approved prescribing information for Vowst® for the contents thereof, including the cited passage.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 85.

86.   Upon information and belief, the live bacterial strains in Vowst® are strains of human commensal bacteria.

**ANSWER:** U.S. Defendants refer to the FDA-approved prescribing information for Vowst® for the contents thereof and admit that Vowst® is manufactured from human fecal matter sourced from qualified donors.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 86.

87.   Upon information and belief, the live bacterial strains in Vowst® are spore-forming bacteria. Section 11 of the Prescribing Information states, "[e]ach capsule of VOWST contains between $1\times10^6$ and $3\times10^7$ Firmicutes spore colony forming units."

**ANSWER:** U.S. Defendants refer to the FDA-approved prescribing information for Vowst® for the contents thereof, and, except as so admitted, deny the allegations of paragraph 87.

88.   Upon information and belief, live bacterial strains in Vowst® belong to the clostridium genus. Upon further information and belief, at least some of the live bacterial strains in Vowst® belong to Clostridium clusters IV and/or XIVa. The Table below is a portion of Table S3 from the Supplementary Appendix to the article, *SER-109, an oral microbiome therapy for*

*recurrent Clostridioides difficile infection* published in the New England Journal of Medicine. The Table lists the organism genera present in Vowst®.

Table S3. Taxonomic composition of organisms identified in SER-109

| Phylum | Class | Order | Family | Genus |
|---|---|---|---|---|
| Firmicutes | Bacilli | Bacillales | Bacillaceae | Bacillaceae novel genus |
| | | | | Bacillus |
| | | | | Caldibacillus |
| | Clostridia | Clostridiales | Christensenellaceae | Christensenellaceae novel genera |
| | | | Clostridiaceae | Clostridiaceae novel genera |
| | | | | Clostridium |
| | | | Clostridiales novel family | Clostridiales novel genus |
| | | | Eubacteriaceae | *Anaerofustis* |
| | | | | *Eubacterium* |
| | | | Lachnospiraceae | *Acetatifactor* |
| | | | | *Anaerobutyricum* |

(Table S3.)

**ANSWER:** U.S. Defendants refer to the cited article and supplementary appendix for the contents thereof, and, except as so admitted, lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88 and, therefore, deny those allegations.

89.    Upon information and belief, the live bacterial strains in Vowst® induce proliferation and/or accumulation of regulatory T cells in the human administered Vowst®. Upon information and belief, butyrate supports proliferation and/or accumulation of regulatory T-cells. Upon further information and belief, Vowst® increases butyrate levels.

**ANSWER:** U.S. Defendants deny the allegations of paragraph 89.

**Infringing Actions**

90.    Upon information and belief, Defendants have willfully infringed the Asserted Patents.

**ANSWER:** U.S. Defendants deny the allegations of paragraph 90.

91.    Upon information and belief, Defendants manufacture Vowst®.

**ANSWER:**  U.S. Defendants deny the allegations of paragraph 91.

23

92.    Upon information and belief, Defendants gained FDA approval to market Vowst® in April 2023.

**ANSWER:**  U.S. Defendants admit that FDA approved Vowst on April 26, 2023; and admit that FDA on that date issued U.S. License No. 2262 to Seres Therapeutics, Inc. under the provisions of section 351(a) of the PHS Act.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 92.

93.    Upon information and belief, Defendants first launched Vowst® in June 2023. Upon further information and belief, Defendants continue to commercially market Vowst®.

**ANSWER:**  U.S. Defendants admit that Vowst® launched in June 2023.  Except as so admitted, U.S. Defendants deny the allegations of paragraph 93.

94.    Upon information and belief, Defendants commercially market, distribute, use, offer for sale, and/or sell Vowst® throughout the United States. As a result, Defendants are liable under 35 U.S.C. § 271(a).

**ANSWER:** U.S. Defendants admit that Aimmune currently distributes Vowst, and, except as so admitted, deny the allegations of paragraph 94.

95.    Upon further information and belief, Nestlé licensed Vowst® from Seres for commercial marketing, distribution, and sales of Vowst® in the United States. Seres' November 2023 10-Q describes the nature of the license agreement between Seres and Nestlé.

**12.  Revenue from Contracts with Customers**

*License Agreement with NHSc Rx License GmbH (Nestlé)*

*Summary of Agreement*

In July 2021, the Company entered into the 2021 License Agreement with NHSc Pharma Partners, succeeded by NHSc Rx License GmbH (together with Société des Produits Nestlé S.A., their affiliates, and their subsidiaries, "Nestlé") (the "2021 License Agreement"). Under the terms of the 2021 License Agreement, the Company granted Nestlé a co-exclusive, sublicensable (under certain circumstances) license to develop, commercialize and conduct medical affairs activities for (i) therapeutic products based on the Company's microbiome technology (including VOWST, previously the Company's SER-109 product candidate) that are developed by the Company or on the Company's behalf for the treatment of CDI and recurrent CDI, as well as any other indications pursued for the products upon mutual agreement of the parties (the "2021 Field") in the United States and Canada (the "2021 Licensed Territory"), and (ii) VOWST and any improvements and modifications thereto developed pursuant to the terms of the 2021 License Agreement (the "2021 Collaboration Products") for any indications in the 2021 Licensed Territory. The Company was responsible for completing development of the first 2021 Collaboration Product, which is VOWST, in the 2021 Field in the United States until first regulatory approval, which was obtained on April 26, 2023.

24

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. U.S. Defendants refer to the cited document for the contents thereof, and, except as so admitted, deny the allegations of paragraph 95.

96.    Upon information and belief, a slide (below) from the VOWST$^{TM}$ FDA Approval Conference Call on April 27, 2023, highlights the license and co-commercialization relationship between Seres and Nestlé.

 

Co-commercializing VOWST in the United States with 50/50 profit sharing per July 2021 agreement, extending our global strategic collaboration

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. U.S. Defendants refer to the cited document for the contents thereof, and, except as so admitted, deny the allegations of paragraph 96.

97.    Upon further information and belief, Nestlé commercially markets, distributes, offers for sale, sells, and/or uses the Vowst® product throughout the United States in the same form in which it is manufactured by Seres.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. To the extent that Plaintiffs are using the term "Nestlé" to refer to Aimmune, U.S. Defendants admit that Aimmune currently distributes Vowst, and, except as so admitted, deny the allegations of paragraph 97.

98.    Upon information and belief, Seres intentionally and knowingly induced Nestlé to infringe the Asserted Patents.

**ANSWER:** U.S. Defendants deny that "Nestlé" may be used to refer to multiple Nestlé entities collectively. Paragraph 98 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 98.

25

99.    Defendants have specific intent that healthcare providers and patients use Vowst® to treat infection, according to the methods of the Asserted Patents.

**ANSWER:** Paragraph 99 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 99.

100.    As a result, Defendants are liable under 35 U.S.C. § 271(b) for intentionally inducing infringement of the Asserted Patents by healthcare professionals and patients who use Vowst®.

**ANSWER:** Paragraph 100 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 100.

101.    Upon information and belief, Seres actively monitors and analyzes patents relevant to their product line. For example, in its 2023 10-K filed with the U.S. SEC, Seres admitted that it was "aware of third-party patent families that include issued and allowed patents, including in the United States, including claims that, if valid and enforceable, could be construed to cover Vowst®, some of our product candidates or their methods of use." Upon information and belief, Seres is aware that the University of Tokyo owns patents related to Vowst®. In the 2023 10-K, Seres also states, "on April 25, 2017, we filed a notice of opposition in the European Patent Office challenging the validity of a patent issued to The University of Tokyo and requesting that it be revoked in its entirety for the reasons set forth in our opposition." The proceeding concerned a patent entitled, "Composition for inducing proliferation or accumulation of regulatory T cells," and which is the EPO entry of PCT/JP2011/063302, the application to which all of the Asserted Patents claim priority. Upon information and belief, Defendants have specific knowledge of the Asserted Patents. Upon information and belief, Defendants have had specific knowledge of the Asserted Patents since before the first commercial marketing of Vowst.

**ANSWER:** Paragraph 101 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the cited documents for the contents thereof, and, except as so admitted, deny the allegations of paragraph 101.

102.    Plaintiffs have been and are being damaged by Defendants' infringement of the Asserted Patents. Plaintiffs have a right to recover from Defendants the damages sustained by Plaintiffs as a result of Defendants' harmful acts.

**ANSWER:** Paragraph 102 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 102.

103.    Plaintiffs have no adequate remedy at law to redress Defendants' infringement of the Asserted Patents.

**ANSWER:** Paragraph 103 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 103.

## COUNT I

### (Infringement of the '652 Patent)

104.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

105.    Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '652 Patent under 35 U.S.C. § 271(b).

**ANSWER:** Paragraph 105 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 105.

106.    Upon information and belief, the method of treating human adults who have Clostridioides difficile infection, according to the full prescribing information for Vowst®, is covered by one or more claims of the '652 Patent.

**ANSWER:** U.S. Defendants deny the allegations of paragraph 106.

107.    The '652 patent claims a method of treating a human subject with an infectious disease, autoimmune disease, or an allergic disease.

**ANSWER:** Paragraph 107 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants refer to the '652 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 107.

108.    The novel method of treatment invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 1 of the '652 Patent which recites:

> 1. A method of treating a human subject having an infectious disease, an autoimmune disease, or an allergic disease, the method comprising administering a pharmaceutical composition comprising a purified bacterial mixture of at least two live bacterial strains belonging to Clostridium clusters IV and/or XIVa to the human subject, wherein the bacterial strains are spore-forming bacteria and are isolated from a human.

(Ex. A, claim 1.)

27

**ANSWER:** Paragraph 108 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '652 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 108.

109. Upon information and belief, Defendants have actual knowledge of the '652 Patent.

**ANSWER:** Paragraph 109 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '652 patent since at least the service of Plaintiffs' FAC and, except so admitted, deny the allegations of paragraph 109.

110. Upon information and belief, Defendants have specific intent that healthcare providers and patients use Vowst® to treat infection, according to the methods of the '652 Patent.

**ANSWER:** Paragraph 110 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 110.

111. Upon information and belief, Defendants have acted with full knowledge of the '652 Patent, with knowledge that physicians and patients will infringe the '652 patent when using Vowst® according to the approved label, and without a reasonable basis for believing that they would not be liable for infringement of the '652 Patent.

**ANSWER:** Paragraph 111 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 111.

112. Upon information and belief, Defendants' acts of infringement of the '652 Patent have been and will continue to be willful and deliberate.

**ANSWER:** Paragraph 112 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 112.

113. Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '652 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 113 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 113.

28

114.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 114 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 114.

## COUNT II

### (Infringement of the '381 Patent)

115.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

116.    Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '381 Patent under 35 U.S.C. § 271(b).

**ANSWER:** Paragraph 116 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 116.

117.    Upon information and belief, the method of treating human adults who have Clostridioides difficile infection, according to the full prescribing information for Vowst®, is covered by one or more claims of the '381 Patent.

**ANSWER:** U.S. Defendants deny the allegations of paragraph 117.

118.    The novel method of treatment invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 1 of the '381 Patent which recites:

> 1. A method of treating a human subject having an infectious disease, an autoimmune disease or an allergic disease, the method comprising administering to the subject a pharmaceutical composition comprising a spore-forming fraction of human fecal matter, wherein the composition induces proliferation and/or accumulation of regulatory T cells, and wherein the composition is formulated for oral administration.

(Ex. B, claim 1.)

**ANSWER:** Paragraph 118 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '381 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 118.

29

119. Upon information and belief, Defendants have actual knowledge of the '381 Patent.

**ANSWER:** Paragraph 119 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '381 patent since at least the service of Plaintiffs' FAC and, except so admitted, deny the allegations of paragraph 119.

120. Upon information and belief, Defendants have specific intent that healthcare providers and patients use Vowst® to treat infection, according to the methods of the '381 Patent.

**ANSWER:** Paragraph 120 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 120.

121. Upon information and belief, Defendants have acted with full knowledge of the '381 Patent, with knowledge that physicians and patients will infringe the '381 patent when using Vowst® according the approved label, and without a reasonable basis for believing that they would not be liable for infringement of the '381 Patent.

**ANSWER:** U.S. Defendants deny the allegations of paragraph 121.

122. Upon information and belief, Defendants' infringement of the '381 Patent has been and continues to be knowing, intentional, and willful.

**ANSWER:** Paragraph 122 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 122.

123. Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '381 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 123 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 123.

124. Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 124 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 124.

## COUNT III

### (Infringement of the '519 Patent)

125.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

126.    Upon information and belief, Defendants' actions have infringed, and will continue to infringe, the '519 Patent under 35 U.S.C. § 271(a).

**ANSWER:** Paragraph 126 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 126.

127.    Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '519 Patent under 35 U.S.C. § 271(b).

**ANSWER:** Paragraph 127 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 127.

128.    Upon information and belief, the pharmaceutical composition of Vowst® is covered by one or more claims of the '519 Patent.

**ANSWER:** Paragraph 128 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 128.

129.    The novel pharmaceutical composition invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 17 of the '519 Patent which recites:

> 17. A pharmaceutical composition comprising an active ingredient, wherein the active ingredient consists of a spore-forming fraction of human fecal matter, wherein the composition is formulated for delivery to the intestine, wherein the composition induces proliferation and/or accumulation of regulatory T cells, and wherein the composition is formulated for oral administration.

(Ex. C, claim 17.)

31

**ANSWER:** Paragraph 129 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '519 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 129.

130. Upon information and belief, Defendants have actual knowledge of the '519 Patent.

**ANSWER:** Paragraph 130 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '519 patent since at least the service of Plaintiffs' FAC and, except so admitted, deny the allegations of paragraph 130.

131. Upon information and belief, when Defendants make, use, and/or sell Vowst®, a pharmaceutical capsule containing spore-forming fraction of human fecal matter, Defendants infringe one or more claims of the '519 Patent.

**ANSWER:** Paragraph 131 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 131.

132. Upon information and belief, Defendants have acted with full knowledge of the '519 Patent and without a reasonable basis for believing that they would not be liable for infringement of the '519 Patent.

**ANSWER:** Paragraph 132 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 132.

133. Upon information and belief, Defendants' infringement of the '519 Patent has been and continues to be knowing, intentional, and willful.

**ANSWER:** Paragraph 133 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 133.

134. Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '519 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 134 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 134.

135.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 135 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 135.

## COUNT IV

### (Infringement of the '978 Patent)

136.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

137.    Upon information and belief, Defendants' actions have infringed, and will continue to infringe, the '978 Patent under 35 U.S.C. § 271(a).

**ANSWER:** Paragraph 137 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 137.

138.    Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '978 Patent under 35 U.S.C. § 271(b).

**ANSWER:** Paragraph 138 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 138.

139.    Upon information and belief, the pharmaceutical composition of Vowst® is covered by one or more claims of the '978 Patent.

**ANSWER:** Paragraph 139 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 139.

140.    Upon information and belief, the method of treating human adults who have Clostridioides difficile infection, according to the full prescribing information for Vowst®, is covered by one or more claims of the '978 Patent.

**ANSWER:** Paragraph 140 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 140.

141.    The novel pharmaceutical composition invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 1 of the '978 Patent which recites:

> 1. A pharmaceutical composition, comprising one or more purified live bacterial strains belonging to Clostridium clusters IV or XIVa, wherein the one or more bacterial strains induces proliferation and/or accumulation of regulatory T cells, wherein the one or more bacterial strains are isolated from a human, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

(Ex. D, claim 1.)

**ANSWER:** Paragraph 141 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '978 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 141.

142. The novel method of treatment invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 16 of the '978 Patent which recites:

> 16. A method of treating a human subject having an infectious disease, the method comprising administering to the human subject the composition of claim 1.

(Ex. D, Claim 16.)

**ANSWER:** Paragraph 142 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '978 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 142.

143. Upon information and belief, Defendants have actual knowledge of the '978 Patent.

**ANSWER:** Paragraph 143 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '978 patent since at least the service of Plaintiffs' FAC and, except so admitted, deny the allegations of paragraph 143.

144. Upon information and belief, when Defendants, make, use, and/or sell Vowst®, a pharmaceutical capsule containing spore-forming fraction of human fecal matter, Defendants infringe one or more claims of the '978 Patent.

**ANSWER:** Paragraph 144 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 144.

145.   Upon information and belief, Defendants have specific intent that healthcare providers and patients use Vowst® to treat infection, according to the methods of the '978 Patent.

**ANSWER:** Paragraph 145 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 145.

146.   Upon information and belief, Defendants have acted with full knowledge of the '978 Patent, with knowledge that physicians and patients will infringe the '978 patent when using Vowst® according the approved label, and without a reasonable basis for believing that they would not be liable for infringement of the '978 Patent.

**ANSWER:** Paragraph 146 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 146.

147.   Upon information and belief, Defendants' infringement of the '978 Patent has been and continues to be knowing, intentional, and willful.

**ANSWER:** Paragraph 147 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 147.

148.   Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '978 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 148 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 148.

149.   Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 149 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 149.

## COUNT V

### (Infringement of the '343 Patent)

150.   Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

35

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

151. Upon information and belief, Defendants' actions have infringed, and will continue to infringe, the '343 Patent under 35 U.S.C. § 271(a).

**ANSWER:** Paragraph 151 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 151.

152. Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '343 Patent under 35 U.S.C. § 271(b).

**ANSWER:** Paragraph 152 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 152.

153. Upon information and belief, the pharmaceutical composition of Vowst® is covered by one or more claims of the '343 Patent.

**ANSWER:** Paragraph 153 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 153.

154. Upon information and belief, the method of treating human adults who have Clostridioides difficile infection, according to the full prescribing information for Vowst®, is covered by one or more claims of the '343 Patent.

**ANSWER:** Paragraph 154 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 154.

155. The novel pharmaceutical composition invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 1 of the '343 Patent which recites:

> 1. A pharmaceutical composition, comprising one or more purified live bacterial strains belonging to Clostridium clusters IV or XIVa, wherein the one or more bacterial strains induces proliferation and/or accumulation of regulatory T cells, wherein the one or more bacterial strains are human commensal bacteria, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

(Ex. E, Claim 1.)

36

**ANSWER:** Paragraph 155 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '343 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 155.

156.    The novel method of treatment invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 16 of the '343 Patent which recites:

> 16. A method of treating a human subject having an infectious disease, the method comprising administering to the human subject the composition of claim 1.

(Ex. E, Claim 16.)

**ANSWER:** Paragraph 156 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '343 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 156.

157.    Upon information and belief, Defendants have actual knowledge of the '343 Patent.

**ANSWER:** Paragraph 157 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '343 patent since at least the service of Plaintiffs' FAC and, except so admitted, deny the allegations of paragraph 157.

158.    Upon information and belief, when Defendants make, use, and/or sell Vowst®, a pharmaceutical capsule containing spore-forming fraction of human fecal matter, Defendants infringe one or more claims of the '343 Patent.

**ANSWER:** Paragraph 158 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 158.

159.    Upon information and belief, Defendants have specific intent that healthcare providers and patients use Vowst® to treat infection, according to the methods of the '343 Patent.

**ANSWER:** Paragraph 159 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 159.

37

160.    Upon information and belief, Defendants have acted with full knowledge of the '343 Patent and without a reasonable basis for believing that they would not be liable for infringement of the '343 Patent.

**ANSWER:** Paragraph 160 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 160.

161.    Upon information and belief, Defendants' infringement of the '343 Patent has been and continues to be knowing, intentional, and willful.

**ANSWER:** Paragraph 161 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 161.

162.    Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '343 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 162 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 162.

163.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 163 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 163.

## COUNT VI

### (Infringement of the '003 Patent)

164.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

165.    Upon information and belief, Defendants' actions have infringed, and will continue to infringe, the '003 Patent under 35 U.S.C. § 271(a).

**ANSWER:** Paragraph 165 states legal conclusions for which no answer is required.  To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 165.

166.    Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '003 Patent under 35 U.S.C. § 271(b).

38

**ANSWER:** Paragraph 166 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 166.

167.    Upon information and belief, the pharmaceutical composition of Vowst® is covered by one or more claims of the '003 Patent.

**ANSWER:** Paragraph 167 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 167.

168.    The novel pharmaceutical composition invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 1 of the '003 Patent which recites:

> 1. A pharmaceutical composition comprising a spore-forming fraction of human fecal matter; wherein the pharmaceutical composition is formulated for oral administration; wherein the spore-forming fraction of human fecal matter in the pharmaceutical composition has been obtained by enriching human fecal matter for a population of spore-forming bacteria therein and comprises two or more bacterial strains; and wherein the spore-forming fraction of human fecal matter in the pharmaceutical composition induces proliferation and/or accumulation of regulatory T cells and wherein the pharmaceutical composition is in the form of a capsule.

(Ex. F, Claim 1.)

**ANSWER:** Paragraph 168 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '003 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 168.

169.    Upon information and belief, Defendants have actual knowledge of the '003 Patent.

**ANSWER:** Paragraph 169 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '003 patent since at least the service of Plaintiffs' SAC and, except so admitted, deny the allegations of paragraph 169.

170.    Upon information and belief, when Defendants make, use, and/or sell Vowst®, a pharmaceutical capsule containing a spore-forming fraction of human fecal matter obtained by enriching human fecal matter and comprising two or more bacterial strains, which induces

39

proliferation and/or accumulation of regulatory T cells, Defendants infringe one or more claims of the '003 patent.

**ANSWER:** Paragraph 170 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 170.

171. Upon information and belief, Defendants have acted with full knowledge of the '003 Patent and without a reasonable basis for believing that they would not be liable for infringement of the '003 Patent.

**ANSWER:** Paragraph 171 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 171.

172. Upon information and belief, Defendants' infringement of the '003 Patent has been and continues to be knowing, intentional, and willful.

**ANSWER:** Paragraph 172 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 172.

173. Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '003 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 173 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 173.

174. Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 174 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 174.

## COUNT VII

### (Infringement of the '196 Patent)

175. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** U.S. Defendants incorporate their answers to the preceding paragraphs as if fully set forth herein.

176. Upon information and belief, Defendants' actions have infringed, and will continue to infringe, the '196 Patent under 35 U.S.C. § 271(a).

40

**ANSWER:** Paragraph 176 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 176.

177. Upon information and belief, Defendants' actions have induced infringement of, and will continue to induce others to infringe, the '196 Patent under 35 U.S.C. § 271(b).

**ANSWER:** Paragraph 177 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 177.

178. Upon information and belief, the pharmaceutical composition of Vowst® is covered by one or more claims of the '196 Patent.

**ANSWER:** Paragraph 178 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 178.

179. Upon information and belief, the method of treating human adults who have Clostridioides difficile infection, according to the full prescribing information for Vowst®, is covered by one or more claims of the '196 patent.

**ANSWER:** Paragraph 179 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 179.

180. The novel pharmaceutical composition invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 1 of the '196 Patent which recites:

> 1. A pharmaceutical composition, comprising six or more live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa, wherein the six or more bacterial strains induce proliferation and/or accumulation of regulatory T cells, wherein at least one of the bacterial strains is a human commensal bacterial strain, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

(Ex. G, Claim 1.)

**ANSWER:** Paragraph 180 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '196 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 180.

181. The novel method of treatment invented by the University of Tokyo and exclusively licensed by Vedanta is reflected in exemplary claim 16 of the '196 Patent which recites:

41

16. A method of treating a human subject having an infectious disease, an autoimmune disease or an allergic disease, the method comprising administering the pharmaceutical composition of claim 1.

(Ex. G, Claim 16.)

**ANSWER:** Paragraph 181 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants refer to the '196 patent for the contents thereof, and, except as so admitted, deny the allegations of paragraph 181.

182. Upon information and belief, Defendants have actual knowledge of the '196 Patent.

**ANSWER:** Paragraph 182 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants admit they have been aware of the '196 patent since at least the service of Plaintiffs' SAC and, except so admitted, deny the allegations of paragraph 182.

183. Upon information and belief, when Defendants make, use, and/or sell Vowst®, a pharmaceutical capsule containing six or more live bacterial strains belonging to Clostridium clusters IV and/or XIVa, which induce proliferation and/or accumulation of regulatory T cells, Defendants infringe one or more claims of the '196 patent.

**ANSWER:** Paragraph 183 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 183.

184. Upon information and belief, Defendants have specific intent that healthcare providers and patients use Vowst® to treat infection, according to the methods of the '196 Patent.

**ANSWER:** Paragraph 184 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 184.

185. Upon information and belief, Defendants have acted with full knowledge of the '196 Patent and without a reasonable basis for believing that they would not be liable for infringement of the '196 Patent.

**ANSWER:** Paragraph 185 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 185.

42

186.    Upon information and belief, Defendants' infringement of the '196 Patent has been and continues to be knowing, intentional, and willful.

**ANSWER:** Paragraph 186 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 186.

187.    Plaintiffs have suffered and continue to suffer damages as a result of Defendants' willful infringement of the '196 Patent in an amount to be determined at trial.

**ANSWER:** Paragraph 187 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 187.

188.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283 and 284.

**ANSWER:** Paragraph 188 states legal conclusions for which no answer is required. To the extent that an answer is required, U.S. Defendants deny the allegations of paragraph 188.

## JURY DEMAND

U.S. Defendants acknowledge that Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

U.S. Defendants deny that Plaintiffs are entitled to any relief whatsoever and respectfully request that the Court deny Plaintiffs' Prayer for Relief such that Plaintiffs shall take nothing in this action.

## DEFENSES

U.S. Defendants have insufficient knowledge or information upon which to form a belief as to whether there may be additional defenses available, and therefore U.S. Defendants reserve the right to amend their defenses and/or assert such additional defenses based upon subsequently acquired knowledge or information that becomes available through discovery or otherwise. Without assuming the burden of proof on any matters where that burden rests on Plaintiffs, U.S. Defendants assert the following defenses with respect the SAC:

43

## First Defense – Failure to State a Claim

The SAC, and each cause of action purportedly alleged therein, fails to state any claim for which relief may be granted.

## Second Defense – Non-Infringement

The Vowst® drug product does not infringe and has not infringed, and U.S. Defendants are not liable for infringement of, any valid and enforceable claim of the Asserted Patents and have not otherwise committed any acts in violation of 35 U.S.C. § 271.

Plaintiffs have not met their burden of pleading infringement of the Asserted Patents in their SAC and will be unable to meet their burden of proof to show infringement of the Asserted Patents.

## Third Defense – Invalidity

Plaintiffs' claims are barred in whole or in part because one or more claims of the Asserted Patents are invalid for failure to comply with one or more of the requirements of the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, including, but not limited to, §§ 101, 102, 103, and/or 112 and any other judicially created requirements for patentability and enforceability of patents and defenses recognized in 35 U.S.C. § 282, at least for the reasons set forth herein in U.S. Defendants-Counterclaim Plaintiffs' Counts I-XIV.

## Fourth Defense – Estoppel

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, unclean hands, and/or waiver, including but not limited to prosecution history estoppel and equitable estoppel.

44

**Fifth Defense – Limitation of Damages and Costs**

Plaintiffs' patent infringement claims and Prayer for Relief are limited in whole or in part, by one or more of 35 U.S.C. §§ 284, 286, 287, and 288 and 28 U.S.C. § 1498.

**Sixth Defense – No Equitable Relief**

Plaintiffs are not entitled to equitable relief under any theory because Plaintiffs have not and will not suffer irreparable harm, are not without adequate remedy at law, the balance of the hardships do not favor entry of an injunction, and/or public policy concerns weigh against any equitable relief.

**Seventh Defense – No Damages**

Plaintiffs have not suffered and will not suffer any injury or damages because of the alleged conduct by U.S. Defendants, and Plaintiffs are not entitled to any damages under 35 U.S.C. § 284.

**Eighth Defense – No Willful Infringement**

U.S. Defendants have not willfully infringed any valid and enforceable claim of the Asserted Patents.

**Ninth Defense – Unclean Hands**

Plaintiffs' cause of action is barred, in whole or in part, by the doctrine of unclean hands.

**COUNTERCLAIMS**

For their counterclaims, U.S. Defendants-Counterclaim Plaintiffs Seres, Aimmune, and NHN allege against Plaintiff-Counterclaim Defendants Vedanta Biosciences Inc. ("Vedanta") and the University of Tokyo (together, "Counterclaim-Defendants") as follows:

**NATURE OF THE ACTION**

1.    This is an action seeking declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 9,433,652 (the "'652 patent"), 9,662,381 (the "'381 patent"), 9,808,519 (the

"'519 patent"), 10,555,978 (the "'978 patent"), 11,090,343 (the "'343 patent"), 12,214,003 (the "'003 patent"), and 12,409,196 (the "'196 patent") against Vedanta and the University of Tokyo.

## THE PARTIES

2.     Seres Therapeutics Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 101 Cambridge Park Dr., Cambridge, MA 02140.

3.     Aimmune Therapeutics, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 1007 US Highway 202/206, Bldg. JR2, Suite E102, Bridgewater, New Jersey 08807.

4.     Nestlé HealthCare Nutrition, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 1007 US Highway 202/206, Bldg. JR2, Bridgewater, New Jersey 08807.

5.     On information and belief, Counterclaim-Defendant the University of Tokyo is a Japanese university having an address at UCR Plaza, 7-3-1 Hongo, Bunkyo-Ku, Tokyo, Japan 113-0033.

6.     On information and belief, Counterclaim-Defendant Vedanta is a Delaware corporation, having its principal place of business at 19 Blackstone St., Cambridge, MA 02139.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under the Declaratory Judgment Act and the patent laws of the United States, more particularly under Title 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 and Title 35 U.S.C. §§ 1 *et seq*.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Counterclaim-Defendants because they have purposefully availed themselves of the rights and privileges of this forum by suing

46

Counterclaim-Plaintiffs in this District, and, on information and belief, because Counterclaim-Defendants conduct substantial business in, and have regular systematic contact with, this District.

10.     Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b).

## COUNT I

### (Declaratory Judgment of Non-Infringement of the '652 Patent)

11.     U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

12.     An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '652 patent.

13.     U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '652 patent.

14.     Plaintiffs assert at least claim 1 of the '652 patent, which states:

> 1. A method of treating a human subject having an infectious disease, an autoimmune disease, or an allergic disease, the method comprising administering a pharmaceutical composition comprising a purified bacterial mixture of at least two live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa to the human subject, wherein the bacterial strains are spore-forming bacteria and are isolated from a human.

(Ex. A, claim 1.)

15.     By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 1 of the '652 patent because at least the following claim element(s) is not present: "comprising a purified bacterial mixture of at least two live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa to the human subject."

16.     U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '652 patent.

47

## COUNT II

### (Declaratory Judgment of Invalidity of the '652 Patent)

17.     U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

18.     An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '652 patent.

19.     The claims of the '652 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '652 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug. 22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of*

48

*Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

20.     A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '652 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

21.     The claims of the '652 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the

49

claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions. By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "treating a human subject having an infectious disease, an autoimmune disease, or an allergic disease" and/or "a pharmaceutical composition comprising a purified bacterial mixture of at least two live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa."

22. The claims of the '652 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. By way of non-limiting example, at least the following claim elements render the '652 patent claims invalid under 35 U.S.C. § 112, second paragraph: "a purified bacterial mixture of at least two live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa."

23. Plaintiffs are entitled to judgment declaring that the claims of the '652 patent are invalid.

## COUNT III

### (Declaratory Judgment of Non-Infringement of the '381 Patent)

24. U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

25. An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '381 patent.

26. U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '381 patent.

27. Plaintiffs assert at least claim 1 of the '381 patent, which states:

50

> 1. A method of treating a human subject having an infectious disease, an autoimmune disease or an allergic disease, the method comprising administering to the subject a pharmaceutical composition comprising a spore-forming fraction of human fecal matter, wherein the composition induces proliferation and/or accumulation of regulatory T cells, and wherein the composition is formulated for oral administration.

(Ex. B, claim 1.)

28. By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 1 of the '381 patent because at least the following claim element(s) is not present: "wherein the composition induces proliferation and/or accumulation of regulatory T cells."

29. U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '381 patent.

## COUNT IV

### (Declaratory Judgment of Invalidity of the '381 Patent)

30. U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

31. An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '381 patent.

32. The claims of the '381 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '381 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora*

*Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug. 22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of*

*Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

33.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '381 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

34.    The claims of the '381 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "treating a human subject having an infectious disease, an autoimmune disease, or an allergic disease"; "wherein the composition is formulated for oral administration"; and/or "wherein the composition induces proliferation and/or accumulation of regulatory T cells."

35.    The claims of the '381 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting example, at least the following claim elements render the '381 patent claims invalid under 35 U.S.C. § 112, second paragraph: "induces proliferation

53

and/or accumulation of regulatory T cells" and/or "a spore-forming fraction of human fecal matter."

36.    Plaintiffs are entitled to judgment declaring that the claims of the '381 patent are invalid.

## COUNT V

### (Declaratory Judgment of Non-Infringement of the '519 Patent)

37.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

38.    An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '519 patent.

39.    U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '519 patent.

40.    Plaintiffs assert at least claim 17 of the '519 patent, which states:

> 17. A pharmaceutical composition comprising an active ingredient, wherein the active ingredient consists of a spore-forming fraction of human fecal matter, wherein the composition is formulated for delivery to the intestine, wherein the composition induces proliferation and/or accumulation of regulatory T cells, and wherein the composition is formulated for oral administration.

(Ex. C, claim 17.)

41.    By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 17 of the '519 patent because at least the following claim element(s) is not present: "induces proliferation and/or accumulation of regulatory T cells."

42.    U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '519 patent.

## COUNT VI

### (Declaratory Judgment of Invalidity of the '519 Patent)

43.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

44.    An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '519 patent.

45.    The claims of the '519 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '519 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug. 22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of*

55

*Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

46.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '519 patent, and would have had a reasonable expectation of success in doing so. The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

47.    The claims of the '519 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the

56

claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "a spore-forming fraction of human fecal matter" that "induces proliferation and/or accumulation of regulatory T cells" and/or "wherein the composition is formulated for oral administration."

48.     The claims of the '519 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting example, at least the following claim elements render the '519 patent claims invalid under 35 U.S.C. § 112, second paragraph: "a spore-forming fraction of human fecal matter" and/or "induces proliferation and/or accumulation of regulatory T cells."

49.     Plaintiffs are entitled to judgment declaring that the claims of the '519 patent are invalid.

## COUNT VII

### (Declaratory Judgment of Non-Infringement of the '978 Patent)

50.     U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

51.     An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '978 patent.

52.     U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '978 patent.

53.     Plaintiffs assert at least claim 1 of the '978 patent, which states:

> 1. A pharmaceutical composition, comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa, wherein the one or more bacterial strains induces proliferation

57

and/or accumulation of regulatory T cells, wherein the one or more bacterial strains are isolated from a human, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

(Ex. D, claim 1.).  Plaintiffs also assert claim 16, which depends from claim 1.

54.    By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 1 or claim 16 of the '978 patent because at least the following claim element(s) is not present: "comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa" and "induces proliferation and/or accumulation of regulatory T cells."

55.    U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '978 patent.

## COUNT VIII

### (Declaratory Judgment of Invalidity of the '978 Patent)

56.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

57.    An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '978 patent.

58.    The claims of the '978 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '978 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora*

*Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug. 22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of*

*Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

59.     A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '978 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

60.     The claims of the '978 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "one or more purified live bacterial strains . . . induces proliferation and/or accumulation of regulatory T cells"; "wherein the pharmaceutical composition is formulated for delivery to the intestine"; and/or "comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa."

61.     The claims of the '978 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting example, at least the following claim elements render the '978 patent claims invalid under 35 U.S.C. § 112, second paragraph: "induces proliferation

60

and/or accumulation of regulatory T cells" and/or "comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa."

62.     Plaintiffs are entitled to judgment declaring that the claims of the '978 patent are invalid.

## COUNT IX

### (Declaratory Judgment of Non-Infringement of the '343 Patent)

63.     U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

64.     An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '343 patent.

65.     U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '343 patent.

66.     Plaintiffs assert at least claim 1 of the '343 patent, which states:

> 1. A pharmaceutical composition, comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa, wherein the one or more bacterial strains induces proliferation and/or accumulation of regulatory T cells, wherein the one or more bacterial strains are human commensal bacteria, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

(Ex. E, claim 1.)  Plaintiffs also assert claim 16, which depends from claim 1.

67.     By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 1 or claim 16 of the '343 patent because at least the following claim element(s) is not present: "comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa" and "induces proliferation and/or accumulation of regulatory T cells."

68.    U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '343 patent.

## COUNT X

### (Declaratory Judgment of Invalidity of the '343 Patent)

69.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

70.    An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '343 patent.

71.    The claims of the '343 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '343 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug. 22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et

al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

72.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '343 patent, and would have had a reasonable expectation of success in doing so. The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

73.    The claims of the '343 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "one or more purified live bacterial strains . . . induces proliferation and/or accumulation of regulatory T cells"; "wherein the pharmaceutical composition is formulated for delivery to the intestine"; and/or "comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa."

74.    The claims of the '343 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting example, at least the following claim elements render the '343 patent claims invalid under 35 U.S.C. § 112, second paragraph: "induces proliferation and/or accumulation of regulatory T cells" and/or "comprising one or more purified live bacterial strains belonging to *Clostridium* clusters IV or XIVa."

75.    Plaintiffs are entitled to judgment declaring that the claims of the '343 patent are invalid.

## COUNT XI

### (Declaratory Judgment of Non-Infringement of the '003 Patent)

76.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

77. An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '003 patent.

78. U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '003 patent.

79. Plaintiffs assert at least claim 1 of the '003 patent, which states:

> 1. A pharmaceutical composition comprising a spore-forming fraction of human fecal matter; wherein the pharmaceutical composition is formulated for oral administration; wherein the spore-forming fraction of human fecal matter in the pharmaceutical composition has been obtained by enriching human fecal matter for a population of spore-forming bacteria therein and comprises two or more bacterial strains; and wherein the spore-forming fraction of human fecal matter in the pharmaceutical composition induces proliferation and/or accumulation of regulatory T cells and wherein the pharmaceutical composition is in the form of a capsule.

(Ex. F, claim 1.)

80. By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 1 of the '003 patent because at least the following claim element(s) is not present: "induces proliferation and/or accumulation of regulatory T cells."

81. U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '003 patent.

## COUNT XII

### (Declaratory Judgment of Invalidity of the '003 Patent)

82. U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

83. An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '003 patent.

84.     The claims of the '003 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '003 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug. 22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced*

66

*Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

85.     A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '003 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

86.     The claims of the '003 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "the spore-forming fraction of human fecal matter . . . induces proliferation and/or accumulation of

regulatory T cells"; and/or "wherein the pharmaceutical composition is formulated for delivery to the intestine."

87.    The claims of the '003 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting example, at least the following claim element render the '003 patent claims invalid under 35 U.S.C. § 112, second paragraph: "induces proliferation and/or accumulation of regulatory T cells."

88.    Plaintiffs are entitled to judgment declaring that the claims of the '003 patent are invalid.

## COUNT XIII

### (Declaratory Judgment of Non-Infringement of the '196 Patent)

89.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

90.    An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding whether U.S. Defendants infringe any valid and enforceable claim of the '196 patent.

91.    U.S. Defendants do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '196 patent.

92.    Plaintiffs assert at least claim 1 of the '196 patent, which states:

> 1. A pharmaceutical composition, comprising six or more live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa, wherein the six or more bacterial strains induce proliferation and/or accumulation of regulatory T cells, wherein at least one of the bacterial strains is a human commensal bacterial strain, and wherein the pharmaceutical composition is formulated for delivery to the intestine.

(Ex. G, claim 1.)  Plaintiffs also assert claim 16, which depends from claim 1.

93.    By way of non-limiting example, U.S. Defendants' Vowst® drug product and/or its use by healthcare providers does not infringe claim 1 or claim 16 of the '196 patent because at least the following claim element(s) is not present: "comprising six or more purified live bacterial strains belonging to *Clostridium* clusters IV and/or XIVa" and "induce proliferation and/or accumulation of regulatory T cells."

94.    U.S. Defendants are entitled to judgment declaring that U.S. Defendants do not infringe and have not infringed any valid and enforceable claim of the '196 patent.

## COUNT XIV

### (Declaratory Judgment of Invalidity of the '196 Patent)

95.    U.S. Defendants repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

96.    An actual and justiciable controversy exists between U.S. Defendants and Plaintiffs regarding the invalidity of the '196 patent.

97.    The claims of the '196 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '196 patent, including but not limited to: Aas et al., *Recurrent* Clostridium difficile *Colitis: Case Series Involving 18 Patients Treated with Donor Stool Administered via a Nasogastric Tube*, 36 Clin. Infect. Diseases 580 (2003); Bakken, *Fecal Bacteriotherapy for Recurrent* Clostridium difficile *Infection*, 15 Anaerobe 285 (2009); Itoh and Mitsuoka, *Characterization of Clostridia Isolated from Faeces of Limited Flora Mice and Their Effect on Caecal Size when Associated with Germ-Free Mice*, 19 Lab'y Animals 111 (1985); Itoh et al., *Intestinal Bacteria Antagonistic to* Clostridium difficile *in Mice*, 21 Lab'y Animals 20 (1987); Atarashi et al., *Regulation of Colonic Regulatory T Cells by* Clostridium *Species*, poster presented at the 14th International Congress of Immunology, Kyoto, 064-03 (Aug.

22, 2010); Atarashi et al., *Induction of Colonic Regulatory T Cells by Indigenous* Clostridium *Species*, 331 Science 337 (2011); Honda et al., *Regulation of T Cell Responses by Intestinal Commensal Bacteria*, 25 J. Intestinal Microbio. 103 (2011); Belkaid and Rouse, *Natural Regulatory T Cells in Infectious Disease*, 6 Nat. Immunol. 353 (2005); Borody et al., *Treatment of Ulcerative Colitis Using Fecal Bacteriotherapy*, 37 J. Clin. Gastroenterol. 42 (2003); Rohlke et al., *Fecal Flora Reconstitution for Recurrent* Clostridium difficile *Infection: Results and Methodology*, 44 J. Clin. Gastroenterol. 567 (2010); Gaboriau-Routhiau et al., *The Key Role of Segmented Filamentous Bacteria in the Coordinated Maturation of Gut Helper T Cell Responses*, 31 Immunity 677 (2009); Sokol et al., Faecalibacterium prausnitzii *Is an Anti-Inflammatory Commensal Bacterium Identified by Gut Microbiota Analysis of Crohn Disease Patients*, 105 Proc. Nat'l Acad. Sci. 16731 (2008); U.S. Patent 5,599,795; Qiu et al., Faecalibacterium prausnitzii *Upregulates Regulatory T Cells and Anti-Inflammatory Cytokines in Treating TNBS-Induced Colitis*, 7 J. Crohn's Colitis e558 (2013); Abrams, *Open-Label, Uncontrolled Trial of Bowel Sterilization and Repopulation with Normal Bowel Flora for Treatment of Inflammatory Bowel Disease*, 58 Curr. Ther. Rsch. 1001 (1997); Van Immerseel et al., *Butyric Acid-Producing Anaerobic Bacteria as a Novel Probiotic Treatment Approach for Inflammatory Bowel Disease*, 59 J. Med. Microbio. 141–43 (2010); Hayashi et al., *Phylogenetic Analysis of the Human Gut Microbiota Using 16S rDNA Clone Libraries and Strictly Anaerobic Culture-Based Methods*, 46 Microbio. Immunol. 535 (2002); Frank et al., *Molecular-Phylogenetic Characterization of Microbial Community Imbalances in Human Inflammatory Bowel Diseases*, 104 Proc. Nat'l Acad. Sci. 13780 (2007); Tvede and Rask-Madsen, *Bacteriotherapy for Chronic Relapsing Clostridium Difficile Diarrhoea in Six Patients*, 333 Lancet 1156 (May 27, 1989).

70

98.     A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '196 patent, and would have had a reasonable expectation of success in doing so. The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

99.     The claims of the '196 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions. By way of non-limiting example, at least the following claim elements lack written description support and/or enablement: "six or more bacterial strains induce proliferation and/or accumulation of regulatory T cells"; "wherein the pharmaceutical composition is formulated for delivery to the intestine"; and/or "belonging to *Clostridium* clusters IV or XIVa."

100.     The claims of the '196 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. By way of non-limiting example, at least the following claim elements render the '196 patent claims invalid under 35 U.S.C. § 112, second paragraph: "induce proliferation and/or accumulation of regulatory T cells" and/or "belonging to *Clostridium* clusters IV or XIVa."

101.     Plaintiffs are entitled to judgment declaring that the claims of the '196 patent are invalid.

## JURY DEMAND

102.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, U.S. Defendants demand a trial by jury on all issues properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, U.S. Defendants and Counterclaim-Plaintiffs respectfully request that the Court find in their favor and grant the following relief:

a)    That Plaintiffs' SAC be dismissed with prejudice, and that Plaintiffs take nothing as a result of the SAC;

b)    That this Court enter judgment on Plaintiff's SAC and U.S. Defendants' Counterclaims in favor of U.S. Defendants, against Plaintiffs, with Plaintiffs being awarded no relief of any kind in this action;

c)    That this Court enter judgment and/or declarations that U.S. Defendants do not infringe the Asserted Patents and that the Asserted Patents are invalid;

d)    An award of U.S. Defendants' reasonable costs and expenses incurred in this action, including attorney's fees and expert fees;

e)    That this Court enter a judgment declaring this case exceptional, and for an award of all costs, disbursements, prejudgment and post-judgment interest, and attorneys' fees pursuant to 35 U.S.C. § 285; and

f) That this Court grant such other and further relief as the Court shall deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Jeremy A. Tigan*

F. Dominic Cerrito
Eric C. Stops
Angus Chen
Catherine Mattes
Elizabeth J. Murphy
QUINN EMMANUEL URQUHART
& SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendants*

*Attorneys for Defendants Seres Therapeutics
Inc., Aimmune Therapeutics, Inc., and Nestlé
HealthCare Nutrition, Inc.*

May 11, 2026

73

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2026, I caused the foregoing to be electronically filed with

the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered

participants.

I further certify that I caused copies of the foregoing document to be served on May 11,

2026, upon the following in the manner indicated:

Daniel A. O'Brien                                          *VIA ELECTRONIC MAIL*
VENABLE LLP
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Dominick A. Conde                                          *VIA ELECTRONIC MAIL*
Damien N. Dombrowski
Joshua D. Calabro
VENABLE LLP
151 West 42nd Street
New York, NY  10036
*Attorneys for Plaintiffs*

                                        */s/ Jeremy A. Tigan*
                                        _____
                                        Jeremy A. Tigan (#5239)